**James A. EMERSON and Georgia F. Emerson**

v.

**Sharon HAM and Bessie D. Kenniston.**

Supreme Judicial Court of Maine.

Feb. 27, 1980.

Richard W. Elliott, Boothbay Harbor (orally), for plaintiff.

Fitzgerald, Donovan, Conley & Day, Duane D. Fitzgerald, John J. Sears, Mark L. Haley, Bath (orally), for Sharon Ham.

Perkins, Thompson, Hinckley & Keddy, Thomas Schulten (orally), Thomas B. Wheatley, Portland, for Bessie D. Kenniston.

Before McKUSICK, C. J., and WERNICK, GODFREY and ROBERTS, JJ.

McKUSICK, Chief Justice.

In this action for alleged fraudulent misrepresentation in the sale of real estate, tried before a Superior Court jury in Lincoln County, the presiding justice at the close of the presentation of plaintiffs' evidence directed a verdict for defendants. We deny plaintiffs' appeal.

Plaintiffs, the purchasers of a house and land in Boothbay Harbor, sued defendant Ham (the seller) and defendant Kenniston (the seller's broker) for fraudulent misrepresentation, alleging that both defendants had "represented to [p]laintiffs that the subject premises were provided with an existing drilled well which said well produced potable water at a flow rate of a minimum of two (2) gallons per minute." Only four days after plaintiffs took title and only two days after they moved in, the well ran dry.

Seller Ham had purchased the land in October, 1974, and soon thereafter had a house built on it. In November, she had an artesian well drilled. According to the drilling contractor, the well was 250 feet deep and supplied between 2 and 2½ gallons of water per minute. Ham and her three children lived in the house from mid-December, 1974, to the closing of her sale to the Emersons on August 29, 1975. According to her testimony she experienced no problems with the water supply.

There was testimony that on July 27, 1975, when plaintiffs went with broker Kenniston to view the property, the seller made the above-quoted representation concerning the water supply. There was also testimony that the representation was repeated by both the seller and the broker just prior to the closing on August 29. Plaintiffs offered only two additional pieces of evidence on the issue of liability: first, the fact that the seller had listed her property for sale in January, less than one month after moving into her new house;[1] and second, the fact that the float valve arm, removed from the toilet flush tank by plaintiffs after they had lived in the house for some time, had been bent to allow less water into the tank.[2]

## I.

In order to prevail in an action for fraud or deceit the plaintiff must prove *inter alia* that the defendant's representation was (a) false and (b) made "with knowledge of its falsity or in reckless disregard of whether it is true or false." *Letellier v. Small*, Me., 400 A.2d 371, 376 (1979). Viewing plaintiffs' evidence, as we must, "in the light most favorable to [them] as the parties against whom the verdict was directed," *Reed v. Rule*, Me., 376 A.2d 445, 445 (1977), we find the question whether defendants' representation was in fact false when made a close one. The fact that the water supply failed so soon after the representation is at least some evidence of its falsity. On the other hand, plaintiffs presented no evidence that we view sufficient to justify a jury concluding that the seller either knew the representation was false or acted in reckless disregard of its truth or falsity. *A fortiori* plaintiffs presented no evidence whatever that the broker, who merely repeated the seller's statement, knew of its falsity or was reckless in relying upon its truth.

This court has stated many times that a jury verdict may not be based on a "mere scintilla" of evidence, *Jordan v. Portland Coach Co.*, 150 Me. 149, 150, 107 A.2d 416, 417 (1954), or upon "pure conjecture," *Freeport Sulphur Co. v. Portland Gas Light Co.*, 135 Me. 408, 416, 198 A. 606, 610 (1938). *See generally* 1 Field, McKusick & Wroth, *Maine Civil Practice* § 50.1 (1970). On the necessary element of *scienter* (*i. e.*, knowledge or reckless disregard of falsity), plaintiffs' entire case boils down to two isolated bits of circumstantial evidence: (1) the seller's listing of the property within a month of moving in and (2) the bent float valve in the toilet tank. That evidence is simply too remote to prove the seller's, or the broker's, state of knowledge concerning the rate of water flow from the well. *See Ginn v. Penobscot Co.*, Me., 334 A.2d 874, 880–81 (1975); *Lawrence v. Larsen*, 156 Me. 168, 173–76, 163 A.2d 364, 367–68 (1960); *Mills v. Richardson*, 126 Me. 244, 250, 137 A. 689, 692 (1927).

Plaintiffs did not establish that the seller had participated in the water-conservation modification of the flush valve; and in any event, there might well have been perfectly innocent reasons for that modification and for her having placed the house on the market the previous January. The presiding justice correctly refused to let the jury speculate that it was the seller's knowledge that the well did not produce at least two gallons of water per minute that had motivated *her* to modify the plumbing and had resulted in the decision to sell her newly built home.

Those two bits of circumstantial evidence are even more remote from having any tendency to prove a deceitful state of mind on the part of the broker who merely repeated the statement plaintiff purchasers had already heard directly from the seller. "An agent can properly rely upon state-

---

1. This evidence was elicited from defendant Ham (called as plaintiffs' first witness) on her direct testimony. She explained that she had listed the property in January because, as a recent divorcee with three children, her "financial status wasn't very good."

2. Having long since been excused from the witness stand when this evidence was elicited (during plaintiff Mrs. Emerson's testimony), defendant Ham never had an opportunity to explain it or even to say whether she had anything to do with bending the float valve arm.

ments of the principal to the same extent as upon statements from any other reputable source." *Restatement (Second) of Agency* § 348, Comment *b* (1958). Plaintiffs' evidence doesn't even suggest that the broker knew of the bent valve arm or had been informed of the seller's motivation for putting the house on the market in January. The broker had no reason, at least as far as is shown by plaintiffs' evidence, to doubt the reliability of the seller's representation, particularly in view of its apparent confirmation by the well driller's measurement.

The presiding justice was plainly correct in directing a verdict for both the seller and the broker.

## II.

Before this court on appeal plaintiffs also argue that the directed verdict was improper on the ground that the provisions of the *Restatement (Second) of Torts* §§ 552C & 552 (1977) are applicable to their action for misrepresentation. Section 552C, which deals with "[Innocent] Misrepresentation in Sale, Rental or Exchange Transaction," would, if available here, impose strict liability upon the seller for her alleged misrepresentation, and section 552, which deals with "Information Negligently Supplied for the Guidance of Others" in the course of one's business or profession, would hold the broker to account if she "fail[ed] to exercise reasonable care or competence in obtaining or communicating the information." Since the common law action for deceit imposes

upon plaintiffs a substantially more burdensome *scienter* requirement (knowledge or recklessness) than does either section 552C (no *scienter* requirement) or section 552 (simple negligence), our conclusion that plaintiffs failed to meet that higher burden makes critical the availability here of the alternative theories of liability provided by the *Restatement*.

 Since plaintiffs have first raised this argument in their brief filed with the Law Court, we decline to decide whether such liability exists as a matter of Maine law. We have no reason to depart from the "well-settled rule of sound appellate practice . . . that a party who seeks to raise an issue for the first time [on appeal] . . . will be denied appellate review, because of his failure to submit the question for decision at the trial level." *Mandarelli v. McGovern*, Me., 393 A.2d 533, 536 (1978).

The entry must be:

Appeal denied.

Judgment affirmed.

NICHOLS and GLASSMAN, JJ., did not sit.