**Wendall PRATT, et al.[1]**

v.

**FREESE'S, INC., and Otis Elevator Co.**

Supreme Judicial Court of Maine.

Argued Nov. 10, 1981.

Decided Dec. 30, 1981.

---

1. The complaint also included a claim on behalf of Wendall Pratt's wife, Dorothy, for loss of consortium.

Gross, Minsky, Mogul & Singal, P. A., George C. Schelling, George Z. Singal (orally), Bangor, for plaintiff.

Rudman & Winchell, Edith A. Richardson (orally), John W. McCarthy, Bangor, for Freese's.

Vafiades, Brountas & Kominsky, Susan R. Kominsky (orally), Lewis V. Vafiades, Bangor, for Otis Elevator Co.

Before McKUSICK, C. J., and NICHOLS, ROBERTS, VIOLETTE and WATHEN, JJ.

WATHEN, Justice.

This is an action to recover damages for personal injuries sustained while plaintiff Wendall Pratt was attempting to enter an elevator manufactured and serviced by Otis and located in Freese's department store in Bangor. At the conclusion of the presentation of evidence during trial in Superior Court (Penobscot County), the presiding justice granted defendants' motions for directed verdicts on plaintiffs' negligence claims.[2] Plaintiffs appeal from this adverse judgment, alleging errors in the trial court's rulings on the applicability of the doctrine of res ipsa loquitur, the sufficiency of the evidence of negligence, and the admissibility of evidence concerning safety devices developed since the elevator was manufactured.[3] We find no reversible error in the action of the trial court in directing a verdict and so affirm the judgments for Freese's, Inc. and Otis Elevator Co.

On July 18, 1977, Mr. Pratt, aged 67, was shopping in Freese's department store. The accident occurred when plaintiff attempted to enter an automatic elevator. Plaintiff testified that the doors, which were equipped with a safety shoe, opened partially and then banged shut, catching and cutting his arm. Once the doors had reopened, plaintiff entered the same elevator and

---

2. Plaintiffs also claimed that defendant Otis was strictly liable in tort for the injuries sustained by Wendall Pratt, but have not appealed the trial court's ruling directing a verdict for Otis on this count of the complaint.

3. Plaintiffs' first appeal in this case was remanded for entry of judgment on the cross claims brought by Otis and Freese's against each other. These claims were dismissed on May 28, and both defendants appeal from the judgment of dismissal. We need not address these appeals in view of our affirmance of the judgments entered below.

traveled to another floor without further mishap. Plaintiffs brought suit against Freese's, claiming that it had negligently operated and maintained the elevator. Otis Elevator, pursuant to a service contract with Freese's, was responsible for the repair and maintenance of the elevator. The suit against Otis therefore alleged that Otis' negligent repair, maintenance and/or manufacture of the elevator was the proximate cause of the injuries sustained by Wendall Pratt.

As their case in chief, plaintiffs presented the testimony of two witnesses: Wendall Pratt and a doctor who had performed surgery on Mr. Pratt's arm approximately four months after the accident. Neither witness presented any evidence explaining the alleged malfunction of the elevator.

Three employees of the elevator company testified on behalf of defendant Otis.[4] The first witness was Edward Marston, a repairman who had serviced this particular elevator at least 500 times in accordance with Otis' contractual obligation to service the elevator every two weeks. He described the safety device of the elevator as a "safety shoe"—a hard, round surfaced bar extending the length of each door which when touched causes the doors to open fully. He further testified that to his knowledge the elevator could not close with the great force plaintiff felt and that it could not close before it had opened fully. Marston stated that the repair and maintenance records for this elevator indicating that during the period between April 1972 and September 1978, there had been no repairs of parts or mechanisms which might have caused the doors to close forcefully. Another repairman testified that he had performed the semi-monthly inspection on July 21, 1977, only three days after the alleged accident, and had not found any evidence of a malfunction of the safety shoe or any change in condition of the surface of the shoe which could account for the injuries sustained by the plaintiff.

Plaintiff, through the defense witnesses, attempted to establish explanations for the malfunction of the elevator. On cross-examination, Marston testified that Otis had been called to Freese's on two occasions, because the elevator doors would not close. Marston admitted that if the screws attaching the electrical cable to the safety switch were loose, the safety shoe would be inoperable but the doors would open and close fully. There was no evidence indicating that in fact the screws were loose. Although plaintiff inquired about numerous other possible problems with this elevator (lack of soft rubber on the safety shoes; absence of warning lights indicating that the shoe did not work; failure to check the safety switch screws regularly), no further evidence describing a possible mechanical cause for the malfunction was introduced.

At the conclusion of the evidence the presiding justice granted both defendants' motions for directed verdict and the jury was dismissed. The justice found that there had been no evidence presented that would directly show negligence by either defendant, and that it would be inappropriate to apply the doctrine of *res ipsa loquitur*. He found that the actual cause of the accident was unknown, that one could only speculate or surmise as to the most probable cause, and that not all of the equally probable causes necessarily involved negligence.

I.

Plaintiff contends on appeal that the presiding justice erred in refusing to allow the case to be submitted to the jury under the doctrine of *res ipsa loquitur*. In *Stodder v. Coca-Cola Bottling Plants, Inc.*, 142 Me. 139, 48 A.2d 622 (1946), this Court put forward a definition of *res ipsa loquitur*:

> The maxim of *res ipsa loquitur* "the thing itself speaks" might, in practice, be translated, "the accident spells negligence." It does not dispense with the requirement that the one who alleges negligence must prove it. It is a *rule of evidence* that relates to the mode of proof. It is appli-

---

4. Defendant Freese's relied for its defense on a stipulation that Otis had the responsibility for maintenance and repair of the elevator involved.

cable, where there has been an unexplained accident, and the instrument that caused the injury was under the management or control of the defendant, and in the ordinary course of events the accident would not have happened *if the defendant had used due care.* (emphasis added) *Id.* at 142, 48 A.2d at 624. *See also Ginn v. Penobscot Co.,* Me., 334 A.2d 874 (1975). In *Ginn,* we stated that: "It is not enough that the accident merely be unusual or its cause unknown." *Id.* at 879.

On appeal, we must view the evidence in the light most favorable to the non-moving parties, the plaintiffs. Assuming that Wendall Pratt accurately described the accident, we find that the elevator did malfunction. However, the doctrine of *res ipsa* is not applicable simply because the elevator malfunctioned. *See Feblot v. New York Times Co.,* 32 N.Y.2d 486, 346 N.Y.S.2d 256, 299 N.E.2d 672 (1973). There must be proof that the accident *would not have occurred* had the defendants used due care. "The doctrine of res ipsa loquitur is applicable only when negligence is either the predominant or the only reasonable explanation shown for the accident." *Oil Building Corp. v. Hermann,* 29 Colo.App. 564, 488 P.2d 1126, 1127 (1971).

Plaintiffs introduced no evidence to show that at the time of the accident a defect in the elevator existed which either defendant could have remedied by using due care. There was no evidence that defendants had knowledge prior to the accident that the elevator was defective or that defendants had failed to maintain the elevator in a safe condition. Responsible causes not involving negligence were not excluded by the evidence presented. *See Ginn v. Penobscot Co.,* Me., 334 A.2d 874, 882 (1975). We conclude that the presiding justice was entirely correct in refusing to apply the doctrine of *res ipsa* since it would have been sheer speculation for the jury to infer that the accident was caused by some negligent act of one of the defendants simply because the accident had in fact occurred. *See Dombrowska v. Kresge-Newark, Inc.,* 75 N.J.Super. 271, 183 A.2d 111 (1962).

## II.

Plaintiffs also assert that sufficient evidence had been adduced to warrant submission of the case to the jury even without an instruction on the applicability of *res ipsa loquitur.* Therefore, plaintiff contends that the trial court erred in directing verdicts for defendants Otis and Freese's.

A verdict should be directed "when a contrary verdict could not be sustained on the evidence." 1 Field, McKusick & Wroth, *Maine Civil Practice* § 50.2 at 663 (1970). If a jury verdict for the plaintiff could have been based only upon pure conjecture or speculation, then a directed verdict was proper. *See Emerson v. Ham,* Me., 411 A.2d 687 (1980); *Freeport Sulphur Co. v. Portland Gas Light Co.,* 135 Me. 408, 198 A. 606 (1938). Plaintiff introduced no direct evidence of the cause of the accident and relies solely on hypothetical scenarios as evidence of defendants' negligence.

We can not discern any facts in the record which would support a finding of negligence on the part of either defendant. Plaintiff's strongest evidence, the repairman's testimony that loose screws would make the safety shoe inoperable, by itself would not permit the jury to infer that there were loose screws which in the exercise of due care defendants could have tightened. Additionally, the use of soft rubber on the safety shoes *might* have prevented the cutting of plaintiff's arm but such a design change would not prevent the alleged malfunction. Plaintiff also claimed that a design change in the enclosure for the safety switches would tend to keep them cleaner. However, there is no evidence in the record indicating that dirty switches could have caused this malfunction.

Plaintiff failed to introduce evidence that would make it possible for the jury to reasonably infer that the accident probably was *not* caused by an unknown and unforeseeable mechanical failure in the elevator. "If, when examined in the light of the

known facts, two or more theories remain equally probable and equally consistent with the evidence, the selection of one to the exclusion of others would rest upon mere surmise and conjecture." *Hersum v. Kennebec Water Dist.,* 151 Me. 256, 263, 117 A.2d 334, 338 (1955). The trial court properly directed a verdict for defendants since any jury verdict for plaintiffs of necessity would be based on speculation.

### III.

At trial, the presiding justice sustained an objection to plaintiffs' question "How does [an electric eye on an elevator] work; could you tell us?" posed to Edward Marston, an employee of Otis. The elevator in question did not have an electric eye device. On appeal, plaintiffs claim this ruling was error.

"When evidence is excluded upon objection and the purpose for which it is offered is not readily apparent, an offer of proof is required." *Banville v. Huckins,* Me., 407 A.2d 294 (1979); M.R.Evid. 103(a)(2). Plaintiffs offer of proof in this case was

> I was attempting to elicit testimony with regard to newer devices that were available on the market since this elevator was installed and the failure of Freese's to adopt any one of the newer safety-type of safety devices.

Unless this offer of proof made the substance of the evidence known to the court, as required by Rule 103, this Court may not find error in the exclusion of evidence.

Plaintiffs offer of proof merely indicated that plaintiffs' counsel *hoped* to introduce unknown testimony about unidentified safety devices. The offer does not show what the witness would have testified to or the manner in which his testimony would have been helpful or admissible. *See United States v. Winkle,* 587 F.2d 705, 710 (5th Cir. 1979). Additionally, based on this offer of proof, it is difficult to determine what relevance the evidence would have had. Therefore, we cannot find error in the trial court's decision to exclude this evidence.

The entry is:

Judgments affirmed.

McKUSICK, C. J., and NICHOLS and VIOLETTE, JJ., concurring.

ROBERTS, J., dissenting.

ROBERTS, Justice, dissenting.

I must respectfully dissent. The plaintiff's testimony, if believed by the jury, would support a finding that the elevator did malfunction. A properly designed, manufactured and maintained elevator does not malfunction. I suggest, therefore, that the plaintiff had presented sufficient evidence upon which the jury could conclude more probably than not that the plaintiff's injuries were caused by the negligence of the defendants.

On the evidence in this case, the jury would have been warranted in finding the defendants exercised due care for the safety of elevator passengers. The jury might even have entertained considerable doubt about the accuracy of the plaintiff's testimony. Such a record, however, generates questions to be resolved by the jury. Those questions ought not to have been resolved by the presiding justice or by us on appeal. I would remand for a new trial.