**Albert GULESIAN**

v.

**NORTHEAST BANK OF LINCOLN.**

Supreme Judicial Court of Maine.

Argued Jan. 12, 1982.

Decided July 22, 1982.

Joanne M. Davis Edwards (orally), Milli-nocket, for plaintiff.

Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Gerald M. Amero (orally), Portland, for defendant.

Before GODFREY, NICHOLS, ROBERTS, CARTER and WATHEN, JJ.

GODFREY, Justice.

Plaintiff Albert Gulesian appeals from a judgment for the defendant Northeast Bank of Lincoln (hereinafter "Northeast Bank") entered in a jury trial in Superior Court, Penobscot County, after the presiding justice granted the bank's motion for a directed verdict. The presiding justice granted the motion because the plaintiff had failed to present any evidence of damages which the jury could find were proximately caused by the conduct of the bank. We affirm the judgment.

In 1975, Dr. Albert Gulesian converted his personal savings account to a joint account in Northeast Bank with his wife, Shirley. Shortly thereafter, the Gulesians began to have marital problems. As a result of the discord, Mrs. Gulesian left the marital home in early August, 1976, taking with her the passbook to the joint savings account. Later in August she filed a complaint for divorce.

Dr. Gulesian testified that, fearing his wife would withdraw the savings before a divorce settlement could be reached, he went to Northeast Bank on the morning of August 12, 1976 and had a personal interview with Sheldon Cole, an assistant vice president. He testified that he explained to Cole that he had just been served with divorce papers and that he believed his wife might withdraw the money from the joint account. Believing the account to be non-marital property, Dr. Gulesian sought to "freeze" the account until a divorce court could decide the question. Gulesian testified that Cole said he would discuss the matter with the bank's attorney and call him back that afternoon; that when Cole called him in the afternoon he said he had good news, that he had talked with the bank's attorney and that the account had been frozen and could not be touched until the divorce.

Cole testified, however, that Gulesian never came to see him personally but that they talked twice over the telephone. Cole testified that in the first conversation he told Gulesian he would check to see what could be done for him, but that in the second conversation he told Gulesian there was nothing they could do for him except attempt to dissuade Mrs. Gulesian from withdrawing the money if she presented the passbook to the bank. Cole said he explained to Dr. Gulesian that by law the bank was required to permit a joint depositor to withdraw the proceeds of a joint savings account upon presentation of the passbook. Although Cole testified that he never told Dr. Gulesian the savings account was frozen, on cross-examination he admitted he was unsure exactly what he had told Dr. Gulesian about the account.

On the morning following these conversations, August 13, 1976, Shirley Gulesian called the bank and said she would be in to withdraw the funds in the joint savings account. Mrs. Gulesian told bank officials that she had been instructed to do so by her attorney. Upon presentation of the passbook, the bank permitted her to withdraw the balance of the account—$14,722.93.

Alleging that the bank's agent, Sheldon Cole, had misrepresented to him that the joint savings account was safe, Dr. Gulesian brought an action against the bank on June 16, 1978, seeking damages resulting from

the alleged misrepresentation.[1] Dr. Gulesian alleged that because of the loss of the savings, he had been forced to borrow various sums of money.[2] The bank answered, denying that it had misrepresented to Dr. Gulesian the status of the account. The bank filed a third-party complaint against Mrs. Gulesian, and the parties asserted various counterclaims against one another. Only Dr. Gulesian's suit against the bank is involved in this appeal.

By agreement of the parties, the trial was bifurcated into separate trials on liability and damages. At the first trial, on liability, held in January, 1979, the presiding justice denied the bank's motion for a directed verdict and instructed the jury, without objection by the bank, that they should find for Dr. Gulesian if they found that the bank assured him that the account would be frozen. The trial justice's instruction said nothing, at least directly, about the necessity of detrimental reliance by Dr. Gulesian as a requirement for the bank's liability, presumably on the theory that the issue of damages was reserved for a later trial. The verdict form given to the jury contained the following interrogatory: "Do you find in favor of the Plaintiff, Dr. Gulesian against the Northeast Bank of Lincoln?" To that question, the jury answered, "Yes." On the basis of that answer, the trial court directed that judgment be entered for Dr. Gulesian against the bank "only as to liability." Thereafter the court denied the bank's timely motion for judgment notwithstanding the verdict. From the trial court's denial of the bank's motions for a directed verdict and for judgment notwithstanding the verdict, the bank has cross-appealed.

At the damage trial, held in May, 1981, the only issues for determination were whether the plaintiff had suffered any damages as a consequence of the bank's misrepresentation and, if so, how much. Dr. Gulesian presented little evidence on the question of damages. He testified that because of the loss of his savings account he was forced to borrow from the bank money he was still paying back with accrued interest. He also testified that as a result of the bank's misrepresentation he had been personally embarrassed, had lost potential investment income, and had been unable to pay some bills. He estimated his total resulting loss to be $31,000. The only other witness was Philip Reed, president of the bank, who corroborated Dr. Gulesian's testimony that since August, 1976, he had twice borrowed money from the bank at a stated interest rate.

At the close of plaintiff's case, the trial court granted the bank's motion for a directed verdict on the ground that Dr. Gulesian had failed to prove that any damages resulted from the bank's misrepresentation. This Court has before it the plaintiff's appeal from the trial court's judgment for the defendant on damages and the defendant's cross-appeal from the judgment for the plaintiff on liability.

■ The standard of review for judging the propriety of granting a directed verdict for the defendant was set forth in *Boetsch v. Rockland Jaycees*, Me., 288 A.2d 102, 104 (1972):

> [W]e must view the evidence, 'including every justifiable inference,' in the light most favorable to the plaintiff so that we may decide whether by any reasonable view of this evidence a jury verdict for the plaintiff could be sustained.

*Accord Cox v. Dela Cruz*, Me., 406 A.2d 620, 621 (1979). However, a jury verdict cannot be based on a mere scintilla of evidence or on pure conjecture. *See Emerson v. Ham*, Me., 411 A.2d 687, 689 (1980). Accordingly, the issue presented for review on plaintiff's appeal is whether Dr. Gulesian presented legally sufficient evidence of damages prox-

---

1. In the interval between the alleged misrepresentation and institution of this action, the Gulesians obtained a divorce in Superior Court, Somerset County. The divorce decree divided the marital property of the parties but did not deal with or even mention the $14,722.93 withdrawn from the savings account by Mrs. Gulesian.

2. In his complaint, plaintiff alleged other bases for recovery of damages but apparently did not pursue them in the trial court. They are not at issue in this appeal.

imately caused by the misrepresentation of the bank.

■ In his action for damages, Dr. Gulesian had the burden of proving that his claimed losses were the proximate result of the bank's misrepresentation. In an action for a money judgment based on estoppel arising out of misrepresentation, plaintiff must show that he sustained financial loss because of the misrepresentation. That is the rule in an action for deceit however flagrant the misrepresentation may have been, W. Prosser, *Handbook of the Law of Torts* § 110, at 731 (4th ed. 1971), and no reason appears for not applying the same rule where the cause of action is based on estoppel by misrepresentation.

■ In general, the provisions of 9–B M.R.S.A. § 427(4)(A) as the section stood in 1979 [3] insulated the bank from liability for payment of a joint savings account to either signatory on the presentation of the passbook. So the bank could not be held liable merely on the ground that it permitted Mrs. Gulesian to withdraw the savings. Unless Dr. Gulesian proved at trial that except for Cole's misrepresentation he could have prevented his wife from withdrawing the money, he failed to present legally sufficient evidence of damages proximately caused by the misrepresentation.

Although Dr. Gulesian must be regarded as having proved that the bank misrepresented the status of his account, he did not prove such damages. He testified that because of the bank's misrepresentation he was forced into debt, was personally embarrassed, lost potential investment income and had been unable to meet all of his financial obligations. That testimony does not support a claim for damages proximately caused by the misrepresentation. Those asserted damages may have resulted from Dr. Gulesian's loss of use of the savings account, but there was no evidence to show that they were the result of the bank's misrepresentation. Apart from the absence of proof that Dr. Gulesian could have effectively taken some preventive action to block the account in the twenty-hour interval between his last conversation with Cole and Mrs. Gulesian's withdrawal of the money,[4] he did not show how, if the account had been blocked (or "frozen," as he put it), he could have used the account himself to avoid the costs he sustained as a result of the unavailability of the funds. He would not have been able to pay debts or make investments out of a frozen account. Because there was no evidence in the record of damages proximately caused by the bank's misrepresentation, the presiding justice was correct in granting the bank's motion for a directed verdict.

It is unnecessary to consider the issues presented by the bank's cross-appeal, and we intimate no opinion on them.[5]

The entry is:

Appeal denied.

Judgment affirmed.

All concurring.

---

**3.** Those provisions, as enacted by P.L.1975, ch. 500, then read as follows:

When a deposit has been made or shall hereafter be made in any financial institution authorized to do business in this State in the names of 2 or more persons, payable to either, or payable to either or the survivor, such deposit, or any part thereof, or the interest or dividends thereon may be paid to any or either of said persons, whether the other or others be living or not, or to the legal representative of the survivor of said persons, and the receipt or acquittance of the persons to whom said payment is so made shall be a valid and sufficient release and discharge to such financial institution for any payment so made.

The statute has since been amended. 9–B M.R. S.A. § 427(4)(A) (1980).

**4.** On cross-examination Dr. Gulesian testified that there was nothing he could have done to prevent the withdrawal by Mrs. Gulesian if Mr. Cole had told him that there was nothing the bank could do for him.

**5.** The moral of this case is that it does not make much sense to hold separate trials on liability and damages in a case like this one where detrimental reliance is an essential element of the cause of action.