Paul F. Macri (orally), Jeffrey A. Thaler, Berman, Simmons & Goldberg, Lewiston, for plaintiffs.

Gerard O. Fournier, Judith W. Andrucki (orally), Isaacson & Raymond, Lewiston, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

**Mariette and Jean–Paul POULIN**

v.

**AQUABOGGAN WATERSLIDE.**

Supreme Judicial Court of Maine.

Argued Sept. 20, 1989.

Decided Dec. 28, 1989.

there was no evidence that the lawyers had fully informed 3K of the risks.

WATHEN, Justice.

The plaintiffs, Mariette Poulin and her husband Jean–Paul Poulin,[1] appeal from a judgment entered in the Superior Court (Androscoggin County, *Brodrick, J.*). A jury found no negligence on the part of the defendant, Aquaboggan Waterslide, for the back injury suffered by Mrs. Poulin as a result of using the defendant's waterslide in Saco. On appeal, plaintiffs argue *inter alia* that the Superior Court erred in refusing to instruct on the doctrine of *res ipsa loquitur*. We agree and we vacate the judgment.

1. Plaintiff-husband Jean–Paul Poulin seeks recovery for loss of consortium because of the injury to Mariette.

The facts presented at trial may be summarized as follows: Mrs. Poulin visited the Aquaboggan Water Park with her family in August 1985. Mrs. Poulin took a ride on one of the waterslides located in the Park. She testified that she questioned attendants on the slide's safety, including its safety for her lower back, and was assured that the slide was safe.

Mrs. Poulin testified that while riding down the slide on a tobaggan sled, she "hit a bump" that caused the sled to leave the surface of the slide's trough. On landing, she experienced sharp pain in her lower back. She refused immediate treatment, but contacted her chiropractor upon return to her home in Lewiston, and visited him that same day. The chiropractor, Dr. Albert Daigle, diagnosed Mrs. Poulin's injury as a compression fracture of the vertebrae. Dr. Victor Parisien, an orthopedic surgeon who later treated Mrs. Poulin, attributed her chronic pain and extensive symptomatology to the waterslide injury. Aquaboggan's medical expert, Dr. Lawrence Leonard, also an orthopedic surgeon, gave contrary testimony as to the cause of Mrs. Poulin's physical problems.

Several days after the incident, Mrs. Poulin returned to the Park to identify the source of her injury and to take photographs. She testified that she observed people bouncing at the same point on the slide where she had and she noticed "kind of a gap" in the surface of the slide at that location. Both parties presented expert testimony as to the general safety of the slide and as to the gap that Mrs. Poulin said she observed. The Poulins' expert, a certified safety specialist, testified that the force of the toboggan sleds traveling down the slide caused a gap in the seam of the slide's trough. This gap created a bump that caused Mrs. Poulin's sled to leave the surface of the slide. He also testified that the manner in which patrons were instructed to ride the sleds placed them at greater risk of sustaining back injuries. His opinion was that Aquaboggan failed to meet industry standards for inspection and maintenance.

Aquaboggan's expert, a mechanical engineer, refuted the plaintiffs' evidence that a gap in the seam existed at the time of Mrs. Poulin's ride. His opinion was based, in part, on the fact that there was no evidence of fiberglass cracks or repairs that would have been apparent had there been a gap. He further testified that a gap of the size Mrs. Poulin said was present would have acted as a brake, causing the sled to tip over and preventing it from continuing down the slide.

At the conclusion of trial plaintiff requested an instruction on the doctrine of *res ipsa loquitur*. The Superior Court declined the request and instructed generally on negligence. The jury found that Aquaboggan was not negligent, and judgment was entered in its favor. The Poulins appealed to this Court.

*Res ipsa loquitur* is neither substantive law nor a theory of negligence. Rather, it is a form of circumstantial evidence that permits a jury to infer negligence and causation from the mere occurrence of an event. *Restatement (Second) of Torts* § 328D comment (b), at 157 (1965); W. Prosser & W. Keeton, *The Law of Torts* § 40, at 258 (5th ed.1984).

In *Ginn v. Penobscot Co.*, 334 A.2d 874, 880 (Me.1975), we adopted the definition of *res ipsa loquitur* set forth in the *Restatement (Second) of Torts* § 328D which provides in pertinent part that:

(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

*Id; see also Hull v. L. & A. Montagnard Social Club, Inc.*, 498 A.2d 597, 598–99 (Me.1985).

■ It has long been the rule in Maine that a claimant may rely on the doctrine of

*res ipsa* even though the action is premised alternatively on a specific act of negligence. *Shea v. Hern*, 132 Me. 361, 171 A. 248 (1934). In *Shea*, a motor vehicle operated by the defendant left the road and injured the passengers. On appeal, the defense argued that a *res ipsa* instruction was erroneously given because the plaintiffs specifically alleged excessive speed. We stated "[n]either by alleging in the alternative a definite act of negligence, nor by offering proof of it, did the plaintiffs forfeit their right to rely on the doctrine of *res ipsa loquitur.*" *Id.* at 366, 171 A. at 250.

▊ In the present case, plaintiff attempted to prove a specific defect in the slide. Alternatively, plaintiff argued that the jury should have been permitted to consider her claim that the toboggan sled on which she was riding would not become airborne in the absence of negligence. Because a jury could reasonably conclude that such an event would not occur in the absence of negligence, plaintiff was entitled to an instruction on *res ipsa loquitur.* See *Restatement (Second) of Torts* § 328D comment e.

The trial court declined to give the instruction on the ground that it was more probable than not that Mrs. Poulin's accident was not one that would have occurred in the absence of Aquaboggan's negligence. *See Restatement (Second) of Torts* § 328D(1)(a). Rather than making such a factual determination, the Court should review the evidence to determine whether a jury rationally could conclude by a preponderance of the evidence that the elements of the Restatement apply. *Restatement (Second) of Torts* § 328D(2) & (3).

Because we vacate, we need not address the remaining issues raised on appeal.

The entry is:

Judgment vacated.

1. *See supra* p. 927 of Court's opinion.

McKUSICK, C.J., and ROBERTS, GLASSMAN, HORNBY and COLLINS, JJ., concur.

CLIFFORD, Justice, dissenting.

I respectfully dissent.

I agree with the court that the Superior Court applied an inappropriate standard in refusing to instruct the jury on *res ipsa loquitur,* although in my judgment it reached the right result.[1] Nor do I disagree with the court that a plaintiff can rely on *res ipsa loquitur* even though the action is premised alternatively on a specific act of negligence. The Poulins' case, however, is premised entirely on an injury occurring in a specific, fully-explained manner, and in my judgment, there is insufficient alternative evidence as to the manner of injury or Aquaboggan's negligence upon which to base a *res ipsa* instruction.

Under *res ipsa loquitur,* the negligence of the defendant must be inferred from the circumstances of an occurrence; the occurrence must be, at least in part, unexplained. *Ginn v. Penobscot Co.,* 334 A.2d 874, 879 (Me.1975); *Corbett v. Curtis,* 225 A.2d 402, 405–06 (Me.1967); *Cratty v. Samuel Aceto & Co.,* 151 Me. 126, 132, 116 A.2d 623 (1955); *Stodder v. Coca–Cola Bottling Plants, Inc.,* 142 Me. 139, 142, 48 A.2d 622 (1946). When a plaintiff's evidence of negligence has been so substantial that it provides "a full and complete explanation of the event, if the jury chooses to accept it," then the incident is no longer unexplained, there is nothing to infer and *res ipsa loquitur* does not apply. *Utica Mutual Ins. Co. v. Ripon Cooperative,* 50 Wis.2d 431, 184 N.W.2d 65, 69 (1971); *Roylance v. Rowe,* 737 P.2d 232, 235 (Utah App.1987); *Shea v. Hern,* 132 Me. 361, 365, 171 A. 248 (1934); W. Prosser & W. Keeton, *The Law of Torts* § 40, at 260 (5th ed. 1984). It is only when the evidence fails to completely explain the cause of a plaintiff's

injury, yet allows a reasonable inference that the plaintiff's injury was caused by the defendant's negligence, that the jury should be instructed on *res ipsa loquitur. Utica Mutual,* 184 N.W.2d at 69; *Roylance,* 737 P.2d at 235.

When a plaintiff presents evidence fully explaining an injury, yet requests that the jury be instructed on *res ipsa loquitur,* the court must determine from the "character" of the incident, *Ginn,* 334 A.2d at 879, whether, *aside* from the complete explanation advanced by the plaintiff and presented to the jury for its decision, there is sufficient evidence to support a rational inference that the defendant was negligent and that the plaintiff's injury resulted from that negligence. Although the Poulins requested an alternative instruction on *res ipsa loquitur,* they presented no evidence, aside from that considered and rejected by the jury, on which to base such an instruction. The Poulins presented evidence that Mrs. Poulin was injured upon impact after hitting a bump on the surface of the slide, becoming airborne and landing. Their expert witness, a safety specialist, testified that the bump resulted from a gap in a seam on the slide's surface. The Poulins introduced photographs of that portion of the slide where each family member testified to observing a specific gap in the seam of the slide. They related that they saw water seeping through the gap and that toboggans "bumped" and became airborne as they passed over it. Mrs. Poulin said, after observing the gap in the slide, "Now I know where I got hurt." The trial justice, who had presided over the six-day trial stated that "bumps are what this case is all about, the bump that caused the accident."[2]

In applying the provisions of section 328D of the *Restatement (Second) of Torts, aside* from the specific evidence presented by the Poulins explaining Aqua-

boggan's negligence and Mrs. Poulin's injury resulting from the bump at the location of the gap in the slide, and excluding any possibility that the slide was inherently dangerous (a theory not alleged or claimed by the Poulins), I find no evidence in the record on which a jury rationally could base an inference that Mrs. Poulin's injury was caused by Aquaboggan's negligence. Excluding the Poulins' explanation of the incident and the design of the slide, the injury cannot be found to be "of a kind which ordinarily does not occur in the absence of negligence...." *Restatement (Second) of Torts* § 328D(1)(a). Nor is there any evidentiary basis on which a jury rationally could conclude that "other responsible causes, including the conduct [or the physical condition of Mrs. Poulin], ... are sufficiently eliminated by the evidence...." *Id.* § 328D(1)(b). Aside from the specific evidence of negligence presented by the Poulins and considered by the jury after having been properly instructed, there is "no [other] evidence which would remove the causation question from the realm of conjecture and place it [within] the realm of reasonable inferences...." *Utica Mutual,* 184 N.W.2d at 69. "[S]imply because the accident had in fact occurred" is an insufficient reason for the court to give a *res ipsa loquitur* instruction, and a verdict for the Poulins arrived at under the principles of *res ipsa* would have been based upon "sheer speculation." *Pratt v. Freese's, Inc.,* 438 A.2d 901, 904 (Me.1981). The trial court correctly refused to instruct the jury on *res ipsa loquitur.*

I would reject the Poulins' other contentions that the jury instructions were inadequate and would affirm the judgment.

**2.** The Poulins also presented evidence that the gap was not detected and corrected because of Aquaboggan's negligence in inspection and maintenance, and that Aquaboggan negligently instructed Mrs. Poulin on the manner in which she should ride down the waterslide. The jury was instructed on Aquaboggan's duty of care as including a duty to use reasonable care to inspect the safety of the slide and to discover harmful conditions on the slide, and a duty to warn the public about dangers of which it knew or should have known. The court also instructed the jury that Aquaboggan had a duty to warn of risks to members of the public with particular physical conditions of which Aquaboggan knew or should have known. The jury, having been adequately instructed, found no negligence on the part of Aquaboggan.