OPINION
This is an accelerated appeal taken from a final judgment of the Geauga County Court of Common Pleas. Appellants, Jeffrey A. Fleegle and Robin R. Fleegle, appeal from the trial court's grant of a directed verdict in favor of appellees, Funtime, Inc. and Geauga Lake.
Geauga Lake is an amusement park located in Aurora, Ohio. Funtime, Inc. is an Ohio corporation which owned and operated Geauga Lake during the period in question. One of the attractions at the amusement park is a water slide known as Neptune Falls. As originally constructed in 1985, Neptune Falls consisted of four different water slides that were designated as A, B, C, and D.[1] Each slide contained various twists and turns leading to a pool of water at the base of the slide.
On July 27, 1994, appellants paid for admission to Geauga Lake along with other members of their family. At approximately 6:00 p.m., they decided to ride Neptune Falls. Robin Fleegle, who was six months pregnant at the time, rode down Slide D without incident. When Jeffrey Fleegle ("Fleegle") went down Slide D, however, he injured his right shoulder by hitting it against the wall of the water slide as his body banked through one of the curves. Upon reaching the pool at the bottom, he sought immediate attention at the Geauga Lake medical center. From there, Fleegle was transported to a local hospital where x-rays revealed a complete separation of the acromioclavicular joint in his right shoulder. He eventually underwent surgery to repair the shoulder.
On July 26, 1996, appellants filed an action for personal injury against appellees. The complaint alleged that appellees were negligent in their maintenance of the water slide and that such negligence proximately caused the injury to Fleegle. Appellants sought damages for medical expenses, lost wages, pain and suffering, and loss of consortium.
Following time for discovery, a jury trial commenced on April 22, 1998. Fleegle testified on both direct and cross-examination. In addition, appellants' counsel called two employees from Geauga Lake to testify on cross-examination. At the conclusion of appellants' case, the defense moved for a directed verdict pursuant to Civ.R. 50(A).
The trial court orally granted the motion for a directed verdict. In doing so, the trial court concluded that appellants had not introduced any evidence that appellees had been negligent. Specifically, there was no evidence tending to demonstrate that appellees failed to use ordinary care in operating Slide D at Neptune Falls or that appellees knew of an unsafe condition associated with the water slide and failed to correct such condition. Following the directed verdict, appellants unsuccessfully moved for a new trial under Civ.R. 59.
From this judgment, appellants filed a timely appeal with this court. They now assert the following assignments of error:
 "[1.] The trial court erred in failing to apply the doctrine of res ipsa loquitur to the evidence introduced by appellants, where appellants presented substantial evidence to satisfy each of the doctrine's prerequisites.
 "[2.] The trial court erred in excluding evidence proffered by appellants regarding similar injuries that occurred on appellees' water slides under similar circumstances.
 "[3.] The trial court erred in granting a directed verdict for appellee[s] where appellants had presented sufficient evidence to create a question of fact for the jury to determine under the doctrine of res ipsa loquitur."
In their first assignment of error, appellants contend that the trial court erred in ruling that the requirements for applying res ipsa loquitur had not been satisfied in the case at bar. The applicability of the doctrine was before the trial court at the directed verdict stage. In granting the motion for a directed verdict, the trial court determined that res ipsaloquitur was not a valid basis upon which to present the case to the jury.
Subsequently, appellants argued that they were entitled to a new trial on the ground that the trial court committed an error of law by not allowing the case to go to the jury with an instruction on res ipsa loquitur. The trial court overruled the motion for a new trial, thereby again rejecting the applicability of the doctrine.
As a general matter, the mere fact that an injury or accident occurs does not automatically lead to an inference of negligence.Gayheart v. Dayton Power Light Co. (1994), 98 Ohio App.3d 220,229, citing Laughlin v. Cleveland (1959), 168 Ohio St. 576. In other words, negligence is not presumed under the law. Wise v.Timmons (1992), 64 Ohio St.3d 113, 116, citing Biery v.Pennsylvania RR. Co. (1951), 156 Ohio St. 75, paragraph two of the syllabus.
The doctrine of res ipsa loquitur, literally meaning "the thing speaks for itself," represents an exception to the general prohibition against inferring negligence. As an exception to the general rule, it is limited in application and is triggered "only where the special reasons for its existence are present." Soltzv. Colony Recreation Ctr. (1949), 151 Ohio St. 503, 511.
The doctrine of res ipsa loquitur is not a substantive rule of law, but rather is a rule of evidence which permits the trier of fact to infer negligence on the part of the defendant when the logical premises for the inference are demonstrated. JenningsBuick, Inc. v. Cincinnati (1980), 63 Ohio St.2d 167, 169; Fink v.New York Central RR. Co. (1944), 144 Ohio St. 1, paragraph two of the syllabus; Glowacki v. North Western Ohio Ry. Power Co. (1927), 116 Ohio St. 451, paragraph one of the syllabus. The application of res ipsa loquitur does not alter the nature of the plaintiff's claim in a negligence action, but instead simply permits the plaintiff to prove his or her case through circumstantial evidence, as opposed to direct evidence. JenningsBuick, 63 Ohio St.2d at 170.
Res ipsa loquitur permits the trier of fact to infer negligence on the part of the defendant from the circumstances surrounding the infliction of injury on the plaintiff. In order to warrant its application, the plaintiff must establish the following: (1) the instrumentality causing the injury was under the exclusive management and control of the defendant at the time of the actual injury or at the time of the creation of the condition which resulted in the injury; and (2) the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed. Walker v. MobilOil Corp. (1976), 45 Ohio St.2d 19, 21; Hake v. Wiedemann BrewingCo. (1970), 23 Ohio St.2d 65, 66-67.
The doctrine of res ipsa loquitur is premised upon the absence of direct evidence of acts or omissions constituting negligence. It raises the circumstantial inference of negligence only in those rare instances where the instrumentality was accessible only to the defendant and where the nature of the accident was such that it ordinarily would not have happened in the absence of negligent conduct.
Application of the doctrine does not relieve the plaintiff of the burden of proving negligence or give rise to any presumption in the plaintiff's favor. Instead, it merely functions as an evidentiary inference to be considered by the trier of fact. The defendant is then free to rebut the inference of negligence. The trier of fact ultimately determines how much weight to accord the inference and any corresponding rebuttal. Walker,45 Ohio St.2d at 21. Thus, a conclusive finding of negligence is not mandatory, but rather is merely permissible. Morgan v. Children's Hosp. (1985), 18 Ohio St.3d 185, 187 (holding that the trier of fact "is permitted, but not compelled, to find negligence"); JenningsBuick, 63 Ohio St.2d at 169 (observing that res ipsa loquitur "is an evidentiary rule which permits, but does not require, the jury to draw an inference of negligence"); Wiley v. Gibson (1990),70 Ohio App.3d 463, 465.
The applicability of res ipsa loquitur must be determined by the trial court on a case-by-case basis. Jennings Buick,63 Ohio St. 2d at 171; Gayheart, 98 Ohio App.3d at 230. Whether the plaintiff has adduced sufficient evidence to warrant application of the doctrine is a question of law. Hake, 23 Ohio St.2d at 67;Gayheart, 98 Ohio App.3d at 230. The trial court's decision is then subject to de novo review on appeal.
In the present case, the trial court orally granted the motion for a directed verdict following the close of appellants' presentation of evidence. Thereafter, the trial court issued a written judgment entry in which it explained its reasons for granting the directed verdict.
In this entry, the trial court addressed the applicability ofres ipsa loquitur to the facts of the case. As an initial matter, the trial court determined that the first prerequisite had been satisfied because the instrumentality (i.e., Slide D at Neptune Falls) was within the exclusive management and control of appellees. The trial court, however, went on to conclude that the doctrine was not applicable because the injury suffered by Fleegle did not occur under such unusual circumstances that, in the ordinary course of events, it could be inferred that the injury would not have taken place if ordinary care had been observed by appellees in operating and maintaining Slide D.
We agree that the second prerequisite was clearly not met in the case sub judice.[2] Despite appellants' assertion to the contrary, the accident experienced by Fleegle on Slide D did not occur under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been exercised by appellees.
The doctrine of res ipsa loquitur applies to those unusual scenarios wherein the nature of the accident is such that it is probable that the accident would not have transpired but for negligence on the part of the defendant. The doctrine is triggered only where negligence can reasonably be inferred from the character of the accident itself.
For this very reason, we can distinguish the cases cited by appellants to support their position that a res ipsa loquitur
instruction should have been given. For instance, appellants citeMcGee v. Moxahala Park, Inc. (June 5, 1987), Fairfield App. No. 20-CA-86, unreported, 1987 WL 12527. In McGee, a three-year-old boy sustained a broken leg when his foot became wrapped around an axle on a children's ride called "Tubs-of-Fun." The trial court granted a directed verdict in favor of the amusement park operator. On appeal, the Fifth District Court of Appeals reversed on the basis that the trial court should have instructed the jury on res ipsa loquitur. Unlike the case at bar, the circumstances attending the injury in McGee were of such a character as to warrant the conclusion that the injury would not have occurred in the usual course of events if ordinary care had been observed.
Appellants also cite the case of Poulin v. AquabogganWaterslide (Me. 1989), 567 A.2d 925. In Poulin, a woman rode a toboggan down a waterslide at an amusement park. While riding down the slide, the woman's toboggan hit a bump, thereby causing the sled to go airborne. Upon landing, the woman claimed to have injured her lower back. In her action against the amusement park, the woman asserted two different theories of negligence, to wit: (1) negligence based on a specific defect in the waterslide; and (2) res ipsa loquitur. The trial court refused to include resipsa loquitur in its charge to the jury, and the jury found no negligence on the part of the amusement park.
On appeal, the Supreme Judicial Court of Maine reversed. In doing so, the court held that the plaintiff was entitled to an instruction on res ipsa loquitur because the jury could have reasonably concluded that the toboggan on which she was riding would not have gone airborne in the absence of negligence. Again, unlike the case at bar, the nature of the accident in Poulin
(i.e., the toboggan leaving the surface of the waterslide's trough) was such that it ordinarily would not have occurred absent negligence.
In the present case, res ipsa loquitur was not applicable because the physical injury sustained by Fleegle was not the result of some unusual occurrence or happening. There was absolutely nothing in Fleegle's testimony or the other evidence introduced by appellants which suggested otherwise. Indeed, the sum total of Fleegle's testimony was that he injured his right shoulder by bumping it against the wall of Slide D as he rode down the water slide.
Fleegle conceded on cross-examination that he had ridden other water slides prior to the accident at Geauga Lake and that he was aware that Neptune Falls contained assorted twists and turns. Beyond this, Fleegle also admitted that he knew his body would be sliding up and down the rounded walls of the flume.
The evidence demonstrated that Slide D of Neptune Falls was operated in the usual manner on the day of Fleegle's accident. Numerous patrons, including Fleegle and his wife, rode down the water slide on their backsides in precisely the manner intended. The only unusual occurrence was that Fleegle apparently slid through one of the banked curves at such an angle that it caused his shoulder to impact the wall, thereby causing injury.
Given this, res ipsa loquitur was clearly not applicable. The injury sustained by Fleegle did not occur under such circumstances that it would not have occurred in the usual course of events if ordinary care had been observed. To the contrary, Fleegle's injury was exactly the type of mishap that would still be expected even given the exercise of ordinary care by appellees.
If the trial court had instructed the jury on res ipsaloquitur, it would have exposed appellees to potential liability in the absence of any evidence of negligence. The trial court correctly determined as a matter of law that the doctrine had no application to the case at bar. The first assignment lacks merit.
In their second assignment of error, appellants posit that the trial court erred by excluding a certain document from coming into evidence. The document in question was a 1988 letter written by the maintenance director at Geauga Lake detailing a proposed theory to explain why riders may have been experiencing facial injuries on Slide A of Neptune Falls. The maintenance director's hypothesis related to the design of a particular curve on Slide A, whereas Fleegle was injured on Slide D. Appellants apparently obtained the letter during the discovery process. Slide A and D were not identical in design.
The trial court excluded the letter on the ground that it was not relevant to the instant litigation. On appeal, appellants contend that this decision was in error and that the letter should have been admissible to demonstrate that appellees had prior knowledge of a potentially dangerous condition.
A trial court has broad latitude in determining the admissibility of evidence in any particular case. The admission or exclusion of evidence, in other words, rests within the sound discretion of the trial court. Rigby v. Lake Cty. (1991),58 Ohio St.3d 269, 271; State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. An appellate court which reviews the trial court's admission or exclusion of evidence must limit its analysis to whether the lower court abused its discretion. Rigby,58 Ohio St. 3d at 271, citing State v. Finnerty (1989), 45 Ohio St.3d 104,107. The term "abuse of discretion" connotes more than an error of law or judgment; rather, it implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Rigby,58 Ohio St. 3d at 271; Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
Upon review, we conclude that the trial court did not abuse its discretion in excluding the proffered letter. As written, the letter detailed a potential design flaw in a specific curve of Slide A. Fleegle was not injured on that particular slide, but rather on Slide D. Moreover, the injury sustained by Fleegle was not of the same type described in the letter. No evidence was offered which correlated the defect in Slide A to Slide D. Finally, appellants offered no evidence as to which particular curve Fleegle was sliding through when he sustained the injury. In fact, Fleegle admitted on cross-examination that he did not know which curve he was in at the time of the accident. Given this, there was no way to draw any meaningful comparison between the Slide A injury theory set forth in the 1988 letter and the accident experienced by Fleegle on Slide D.
For all of these reasons, the trial court was within its discretion in excluding the letter from coming into evidence. The second assignment is not well-founded.
In their third and final assignment of error, appellants claim that the trial court erred by granting appellees' motion for a directed verdict. Appellants essentially suggest that they introduced sufficient evidence at trial to justify the submission of the case to the jury.
Civ.R. 50(A)(4) provides as follows:
 "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
Under this rule, a trial court may not grant a directed verdict unless the evidence, when construed in the light most favorable to the nonmoving party, leads reasonable minds to only one conclusion, and that conclusion is adverse to the nonmovant. Civ.R. 50(A), therefore, requires the trial court to give the nonmoving party the benefit of all reasonable inferences that may be drawn from the evidence. Broz v. Winland
(1994), 68 Ohio St.3d 521, 526; Keeton v. Telemedia Co.of S. Ohio (1994), 98 Ohio App.3d 405, 408. If there is sufficient credible evidence to permit reasonable minds to reach different conclusions on an essential issue, then the trial court must submit that issue to the jury.O'Day v. Webb (1972), 29 Ohio St.2d 215, paragraph four of the syllabus; Campbell v. Colley (1996), 113 Ohio App.3d 14,18.
A motion for a directed verdict does not present a question of fact or raise factual issues; rather, it presents a question of law, even though in deciding such a motion it is necessary to review and consider the evidence. Ruta v. Breckenridge-Remy Co.
(1982), 69 Ohio St.2d 66, paragraph one of the syllabus; O'Day, 29 Ohio St. 2d at paragraph three of the syllabus; Darroch v. Smythe,Cramer Co. (Apr. 3, 1998), Lake App. No. 96-L-212, unreported, at 3, 1998 WL 258422. A motion for a directed verdict tests the legal sufficiency of the evidence, not the weight of the evidence or the credibility of witnesses. Ruta, 69 Ohio St.2d at 68; Oslerv. Lorain (1986), 28 Ohio St.3d 345, 347; Posin v. A.B.C. MotorCourt Hotel, Inc. (1976), 45 Ohio St.2d 271, 275. Because a motion for a directed verdict presents a question of law, an appellate court must conduct a de novo review of the trial court's judgment. Nichols v. Hanzel (1996), 110 Ohio App.3d 591, 599;Howell v. Dayton Power Light Co. (1995), 102 Ohio App.3d 6, 13;Darroch, 1998 WL 258422, at 3.
In the instant case, appellants put forth two reasons as to why the trial court should not have granted appellees' Civ.R. 50(A) motion: (1) they offered enough evidence to warrant an instruction on res ipsa loquitur by which the jury could have inferred negligence on the part of appellees; and (2) notwithstanding application of the doctrine of res ipsa loquitur, they offered sufficient evidence to establish that appellees knew, or should have known, that a latent defect or unsafe condition existed on the water slide.
With regard to the former, we have already held that res ipsaloquitur did not apply to the case at bar. Thus, it is obvious that the doctrine could not be a basis upon which to determine that the trial court should not have granted a directed verdict in favor of appellees.
Appellants' second argument suggests that they offered enough actual evidence of negligence to survive the directed verdict motion. In order to establish actionable negligence, it is well-settled that the plaintiff must demonstrate the following elements: (1) the existence of a legal duty; (2) a breach of that duty; (3) proximate causation; and (4) injury or damages. Menifeev. Ohio Welding Prods., Inc. (1984), 15 Ohio St.3d 75, 77; Paddenv. Herron (Dec. 24, 1998), Lake App. No. 97-L-223, unreported, at 3, 1998 WL 964545; Buck v. Canacci (Nov. 21, 1997), Lake App. No. 96-L-185, unreported, at 2, 1997 WL 752632.
In the case at hand, there is no doubt that appellees owed a legal duty to appellants and other paying customers who visit Geauga Lake. Although the owner or occupier of a premises is not an insurer of the safety of invitees, such owner or occupier does owe a duty to exercise ordinary or reasonable care for the protection of invitees. Jackson v. Kings Island (1979), 58 Ohio St.2d 357,359, citing S.S. Kresge Co. v. Fader (1927), 116 Ohio St. 718. This rule applies to proprietors of amusement parks.Jackson, 58 Ohio St.2d at 359, citing Cincinnati Base Ball ClubCo. v. Eno (1925), 112 Ohio St. 175. The duty to exercise ordinary care encompasses an obligation to warn patrons of dangerous conditions known to, or reasonably ascertainable by, a proprietor which a patron should not be expected to discover and protect himself against. Jackson, 58 Ohio St.2d at 359.
Appellants failed to present any evidence tending to prove that appellees breached the duty to exercise ordinary care. As stated previously, the entire substance of Fleegle's testimony was that he injured his shoulder by hitting it against the flume wall as he slid down Slide D in the normal manner prescribed for riders of Neptune Falls.
Beyond this, the only other evidence offered by appellants was elicited during the cross-examination of Larry Anderson ("Anderson"). He was an employee of Geauga Lake who was subpoenaed to testify by appellants. At trial, Anderson testified that a patron was injured during a previous accident on Slide D in 1991. Following this incident, Geauga Lake contacted a fiberglass company to make modifications to Slide D. Anderson indicated that the fiberglass company lessened the degree of several curves on Slide D in order to slow down the speed of its riders. Subsequent to these 1991 modifications, Anderson testified that he was not aware of anyone else being injured while riding Slide D until Fleegle injured his shoulder on June 27, 1994.
Appellants make much of the fact that Slide D was modified in the wake of the prior injury. From this, they maintain that a dangerous condition must have existed on the water slide and that such condition had not been remedied by the previous design alterations.
This evidence hardly constituted proof of a dangerous condition or latent defect. Quite to the contrary, Anderson's testimony revealed that appellees had taken steps to dampen the sharpness of some curves on Slide D after the 1991 accident. There was nothing to suggest that the modifications to Slide D had not achieved their desired objective.
Appellants did not introduce any expert testimony that was critical of the design, construction, or maintenance of Slide D. Given the lack of an expert witness, they essentially offered no evidence whatsoever that the water slide was improperly designed, defectively constructed, or inadequately maintained as it existed on June 27, 1994.
After reviewing the evidence, it is apparent that appellants failed to introduce legally sufficient evidence on a critical element of their cause of action, to wit: that appellees breached the duty of ordinary care. As a matter of law, the trial court properly granted a directed verdict in favor of appellees. The third assignment is without merit.
Based on the foregoing analysis, the assignments of error are not well-taken.
Accordingly, the judgment of the trial court is affirmed.
 __________________________________________ JUDGE JUDITH A. CHRISTLEY
FORD, P.J., O'NEILL, J., concur.
[1] Slide D was torn down in late 1996 in order to make room for the construction of a new attraction at Geauga Lake.
[2] Appellees contend that their operation of Slide D was not exclusive because Fleegle interacted with the water slide, as do all other Geauga Lake visitors who elect to ride Neptune Falls. Appellees point out that Fleegle could have been injured by attempting to brace his right arm against the flume wall in order to slow himself down. At trial, Fleegle testified that he could not recall whether he extended his right arm in this manner. Appellees contend that such active participation by the injured party precluded a finding that the operation of Slide D was totally within the amusement park's control. Given that the second requirement was not satisfied, however, it is not necessary to resolve whether appellees had exclusive control over the water slide.