AMOS A. LARRABEE AND WIFE *vs.* EDWARD SEWALL.

Sagadahoc, 1876.—May 31, 1877.

*Trial. Negligence. Fraud.*

</div>

The question of ordinary care, depending on answers to other questions, some of law and some of fact, and therefore sometimes called a mixed question, is properly left to the jury with appropriate instructions.

Where two alternatives are presented to a traveler upon the highway as modes of escape from collision with an approaching traveler, either of which might fairly be chosen by an intelligent and prudent person, the law will not hold him guilty of negligence for taking either.

Where a traveler selects one of two alternatives of escape from such collision, it is not a question of law, unless in extreme cases and where the facts are undisputed, which alternative he should select; but a question for the jury, whether in making his selection he acts with ordinary care.

A requested instruction should be good in its totality.

If a requested instruction is composed of two propositions, one of which is correct in law and the other erroneous, it is not error to refuse it.

A written discharge of a trespass action procured from the defendant by the plaintiff or those acting for him through fraud, intimidation, or misrepre sentation of material facts, for a sum less than he would have been induced to settle for, but for such practices, is not valid.

Whether fraud was practiced, is a question for the jury.

On Exceptions And Motion.

Trespass for collision on the highway, in substance, that on March 14, 1875, the plaintiff, wife, was carefully driving on the right side of Washington street, Bath, and the defendant, approaching to meet her, so carelessly drove as to induce a collision of carriages, by which she was thrown out; that the main trunk of the right sciatic nerve was thereby injured, resulting in great pain and introversion of her foot and permanent lameness.

The plea was not guilty, with brief statement that since the commencement of the action, and pending the same, August 1, 1875, the defendant paid the plaintiffs the sum of $1500, and that the plaintiffs received the same in full satisfaction of the action, and by their writing released the defendant from all liability; and further, that the collision was on the part of the defendant, an inevitable accident, and that the carelessness of the plaintiff contributed thereto.

The testimony on the part of the plaintiff, wife, was in substance, this: "I left my home in Phippsburg, twelve miles off with my eight year old son, shortly before sunset, with horse and wagon, to meet my husband at the house of Frank O. Moses, on Washington street, Bath, whose wife was my husband's sister; arrived in Washington street about eight o'clock, when crossing North street saw defendant's horse and chaise some rods away, pass Pearl street light, and did not lose sight of them till the collision on the east side of Washington street, just past the north corner of Grove; was driving very slowly, kept reining my horse toward the sidewalk; just as I passed Grove street, the left fore wheel of his carriage struck the left hind wheel of mine. I had the rein in my right hand, I went right out over the dasher on to the hard frozen ground, struck upon my right side in the gutter, very near the curbstone, was hurt upon my right arm, my right hip and whole right side." The plaintiff stated her injuries more at length, how she was taken up by Mr. Litchfield, how she was assisted to the house of her brother-in-law, Moses, by Mr. Sewall, the defendant; how Dr. Briry was called in, examined her, treated; her how much pain she suffered; how after eight days she returned to Phippsburg by wagon; how within a few weeks she

returned to Bath for medical advice, was examined by Dr. Payne and prescribed for, after which had better feelings, but no permanent benefit, and rather grew worse; afterward found the seat of her injury to be the sciatic nerve in the main branch; that this nerve suffered a concussion, a shock, the effect of which had spread by sympathy to other parts; the loss of nervous power had so affected the muscles of her lower limb, that her foot turned in, so that she walked upon its side; that the callouses of the foot produced by walking, were found upon the side, and not as is usual, upon the bottom; that she has been continually lame, growing no better, and scarcely ever free from pain; that she received the fifteen hundred dollars, and gave a receipt in full. Her testimony tended to show that it was obtained through undue influence, over-persuasion, and fraud on the part of Moses and Marr, agents of the defendant; that she had tendered the money back, and on the defendant's refusal to accept it, she deposited it in court.

Other testimony on the part of the plaintiff, tended to show, that at the time of the collision, the plaintiff's horse was close to the sidewalk, on the right side of the road; and the street was lighted from lamp posts, stores, and dwelling houses.

The testimony of the defendant was in substance, that it was very dark, that he was driving slowly, endeavoring to keep to his right; that a light just manifested itself from a window, as he saw and heard this carriage coming, that he immediately pulled up his horse, and found there had been a collision.

At the trial, which lasted nine days, the defendant's counsel requested fourteen specific instructions, of which Nos. 4, 6, and 12, were given in substance in the charge, Nos. 11, 13, 15, 16, and 17, not given except as in the charge, and the following not given:

"I. If Mr. Gould acting for the defendant, told Moses that if he would get such a discharge from the plaintiffs, as Mr. Charles Larrabee should write, he would be responsible to him, (Moses) for the sum of $1500, and Moses thereupon received from Mr. Larrabee the form of the discharge, ready for execution, which has been proved in this case, and carried it to the plaintiffs, and they executed it and delivered it to Moses, and Moses gave them $1500, the defendant thereupon became responsible to Moses for the

$1500, and Moses from that time held the discharge as the agent for the defendant; and the plaintiffs could not withdraw it from his hands without the defendant's consent, or the consent of Moses.

III. That there is no evidence in the case which will justify the jury in finding that Moses was the agent for the defendant, until after his interview with the plaintiffs on Friday, the day before the settlement; and that defendant cannot be held responsible for anything which was said by Moses or Marr at the time of that interview.

V. That there is no such evidence of fraud in this case, as will authorize the jury to find that the discharge was procured by fraud.

VIII. That if the representation was made to the plaintiffs by Moses or Marr, that the defendant was using his money to hire witnesses to testify, such a representation, if made as a matter of fact, was not sufficient to authorize the jury to set the discharge aside.

X. That the advice or persuasion of Moses or Marr, if given to plaintiffs at the time of the settlement, not to consult their counsel, was not a fraud, and furnishes no ground for setting the discharge aside.

XIV. That even if defendant was on the wrong side of the street, and the plaintiff saw his carriage in season to avoid the collision, and had an opportunity to do so before it took place, by the exercise of ordinary skill and care, and neglected to do so, she was guilty of negligence and cannot prevail in this case; and if she saw defendant's carriage in season to turn her horse and carriage into the head of Grove street, or to stop her carriage before the collision, it was her duty to do so."

The verdict was for the plaintiffs for $3000.

To the foregoing, with other rulings, the defendant alleged exceptions.

*A. P. Gould & J. E. Moore*, for the defendant.

*W. Gilbert*, for the plaintiffs, submitted without brief.

DICKERSON, J. Exceptions are taken by the defendant to the refusal of the court to give certain requested instructions, the want of fulness in giving others, and the rulings upon the admis-

sion and exclusion of testimony. We shall consider only the exceptions relied upon in the argument, regarding the others as waived.

Great importance is attached in the argument to the alleged refusal of the court to give the fourteenth requested instruction which was as follows: "that even if the defendant was on the wrong side of the street, and the plaintiff saw his carriage in season to avoid the collision, and had an opportunity to do so before it took place, by the exercise of ordinary skill and care, and neglected to do so, she was guilty of negligence and cannot prevail in this case; and if she saw defendant's carriage in season to turn her horse into the head of Grove street, or to stop him before the collision, it was her duty to do so."

This request contains two propositions; and if either of them is erroneous in law, the court properly refused to give the instruction requested. The second proposition is obviously incorrect. Whether it was the plaintiff's duty to turn his horse and carriage into Grove street, or to stop there depended upon the demand of ordinary care, under all the circumstances of the case; that is a mixed question of law and fact for the jury under appropriate instructions by the court. The court will not, except in very extreme cases, even where the facts are admitted or undisputed, determine the question of ordinary care as matter of law. It will never do so when men of equal intelligence and impartiality might honestly draw different inferences and deduce different conclusions from such facts. In such cases the law invokes the average judgment of twelve men as safer and wiser than that of a single judge. In this very case persons of equal sense and prudence might have accepted different alternatives; one might have turned down Grove street, another might have crossed over to the western side of Washington street, while a third might have kept close to the sidewalk as the plaintiff did, and a fourth perhaps might have stopped the team opposite Albert Moses' house. Where so much depended upon the degree of darkness, the effect of the light from the street lamps and private residences, the rate at which the parties were driving at the time, the plaintiff's estimate of the distance between them, her position upon the lawful side of the street,

her expectations as to the duty and probable course of the defendant, arising from this fact, and her presence of mind under circumstances of suddenly impending personal peril, the law will not declare that ordinary care required her to choose any particular one of the alternatives presented, and hold her guilty of contributory negligence for not doing so. The second paragraph of this requested instruction in substance, called upon the court to withdraw the question of ordinary care from the jury, and to decide it as matter of law. For this reason, at least, the court properly refused to give the requested instruction. *Webb* v. *P. & K. R. R. Co.*, 57 Maine, 117, 132. *Mangam* v. *Brooklyn R. R.*, 38 N. Y. 455. *Detroit* v. *W. R. R. Co. Van Steinberg*, 17 Mich. 99. *Railroad* v. *Stout*, 17 Wall. 659. *Railroad* v. *McElwell*, 67 Pa. St. 315. 2 Redfield on Railways, 231.

The defendant also complains that the twelfth and thirteenth requested instructions were not given in terms, but with qualifications that impaired their force and effect. The substance of these requests is, that negligence is not necessarily to be imputed to the defendant for being upon the wrong side of the way at the time of the collision, and that if the darkness prevented him from distinguishing the right from the wrong side of the way, the jury might take that fact into consideration upon the question of negligence. The instruction upon this point was that if the defendant was at the left of the centre of the road at the time of the collision, the jury might consider it strong evidence of the defendant's carelessness, but that that evidence might be controlled, and should be considered with the other evidence in the case in deciding the question of negligence.

The principal criticism upon this instruction is to the use of the words, "strong evidence of carelesness." We think this language is unobjectionable. The fact that the defendant, at the instant of the collision, was driving in violation of the law of the road is, indeed, very "strong evidence of carelessness." Unexplained and uncontrolled this fact would not only be "strong" but conclusive "evidence of carelessness." The instruction, however, states the proposition in a form more favorable to the defendant by simply declaring in substance that it is "strong evidence" that a party is in the wrong when he is doing that which the law forbids him to do.

The instruction upon the suitableness of the plaintiff's horse, complained of by the defendant, was more favorable to him than the request. The omission to give the words, "and that unsuitableness contributed to the accident," did not damage the defendant, but rather tended to his advantage. The court explicitly instructed the jury that it was the duty of the plaintiff to have a suitable horse, carriage and harness, without restricting this duty by the qualifying words of the request. The defendant cannot complain that the instruction imposed upon the plaintiff a more comprehensive and onerous duty than the request contemplated.

The objections to the admission and exclusion of evidence do not appear to be well founded. Some of the evidence admitted might perhaps have been excluded, as immaterial, but it could not have damaged the defendant; and the other evidence admitted was competent in some one of the various aspects of the case. We do not perceive that any evidence offered by the defendant was improperly excluded.

There remain to be considered the exceptions to the instructions and refusals to instruct in relation to the alleged discharge of the action of the plaintiffs, dated Aug. 21, 1875. There was evidence to show that the wife, plaintiff, on August 23, 1875, tendered back to Moses the $1500 received in discharge of the plaintiffs' claim, for the purpose of rescinding the contract of settlement; and it was admitted that such tender was made to the defendant on the 25th day of the same month. The defendant sought to avoid the effect of the alleged tender to Moses, upon the ground that Moses had previously delivered the discharge to him, but as the evidence of such delivery did not fix the time definitely, the plaintiffs contended that the tender was seasonably made to Moses. The instructions were full and explicit, and we think, unobjectionable, upon this aspect of the case. They were substantially, that if Moses was not acting as the agent of the defendant in effecting the settlement, the plaintiffs had a right to recall the discharge any time before its delivery to the defendant or some one authorized by him to receive it, but if he was the agent of the defendant in that transaction, delivery to him was delivery to the defendant.

The third requested instruction was properly refused. If it were

true, as the defendants' counsel assumes in that request, that there is no evidence in the case to justify the jury in finding that Moses was the agent of the defendant, until after his first interview with the plaintiffs in company with Marr, it was competent for him to ratify their doings. And when we consider that Moses immediately informed the defendant's counsel of that interview, and thereupon became the defendant's agent in the subsequent negotiations, and that the efforts of Moses and Marr, in reducing the plaintiff's claim against the defendant at their first interview, enured to the benefit of the defendant, the interview on Saturday might properly be regarded as a continuation of the previous interview on Friday, and part and parcel of the same. There was thus good cause for submitting the question of ratification to the jury. The defendant cannot appropriate the advantages, and escape the burdens of Moses and Marr's first interview with the plaintiffs; these are inseparable from each other, and must be accepted or rejected together.

The plaintiffs sought to invalidate the discharge for fraud; and the counsel for the defendant requested the court to instruct the jury that the evidence was not sufficient to set aside the discharge for that cause. The plaintiffs were the principal witnesses of the fraud charged; and Moses and Marr were the persons upon whose statements, representations and doings the allegations of fraud were predicated. The circumstances relied upon to show fraud in obtaining the discharge from the plaintiffs were numerous, covering extended interviews between the plaintiffs and Moses and Marr, for a considerable portion of two days. There was evidence that Moses, a brother-in-law of the husband, plaintiff, while pretending to be laboring for the interests of the plaintiffs, concealed from them his capacity as agent of the defendant, that he represented that the defendant would use money to corrupt the jury, that he was hiring witnesses, that he had seen the defendant and a large number of his witnesses in a most unseemly place, that he, Moses, had consulted the plaintiffs' friends, and that they desired a settlement of the affair, that Marr pretended to the plaintiffs that he had had experience in law suits, was familiar with the law, and came to explain it to them, that he expatiated upon the uncertain-

ties, delays, vexation and expense of a jury trial, told what strange things he knew to have happened among jurors, and that, in general, he corroborated and fortified the statements and representations of Moses. Although this account of their statements and representations is denied by Moses and Marr, it does no violence to their own testimony, to say that they labored as assiduously to affect a settlement of the plaintiffs' claim, as if they had been parties to the suit and desirous of obtaining a discharge from the plaintiffs.

Fraud must be proved, and it is the province of the jury to determine questions of fraud under appropriate instructions from the court in matters of law. Such instructions were given. The jury were instructed that to authorize the setting aside of the discharge for fraud, the plaintiffs must prove that the defendant or his agent intentionally misrepresented some material fact, or produced a false impression in regard to some material fact to mislead the plaintiffs, or to obtain an undue advantage of them, and did thereby obtain the settlement and discharge, and that the misrepresentation or false impression may be as well by deeds or acts as by words; by artifice to mislead as well as by positive assertion. The legal distinction between the expression of an opinion and the representation or assertion of a fact, was pointed out in the charge, and the attention of the jury was called to the most important testimony, relied upon to show fraud, with appropriate instructions upon each alleged element of fraud.

The jury were at liberty to credit the plaintiffs' testimony. They saw and heard the witnesses, and observed their appearance on the stand, and it was their province to judge of their credibility, and the weight of the whole testimony; they must have found that the discharge was obtained by fraud, and we think that the evidence is sufficient in law to warrant that finding. There was therefore no error in refusing to give the fifth requested instruction.

It is apparent from the whole evidence, upon the question of fraud, that the plaintiffs did not sign the discharge until after Moses and Marr had put forth very extraordinary efforts to induce them to do so, and that even then, they consented to the settlement, and signed the discharge with great hesitation and reluc-

tance. Moses' protestations of friendship, if made, and his concealment of his capacity of agent of the defendant, his efforts to dissuade the plaintiffs from consulting their counsel before settlement of their suit, his pretense that he was acting under the advice of their mutual friends, his representations that the defendant would dismiss men from his employment who should testify against him, that he would corrupt jurors, was hiring witnesses, and that he had seen a large number of witnesses with the plaintiff in an unseemly place, confirmed by Marr's pretended knowledge and experience in matters of law and law suits, and his avowals of disinterestedness, were well calculated to win the confidence of the plaintiffs, throw them off their guard, intimidate, mislead, and deceive them, in respect to material facts, and induce them to sign a discharge of their action for a sum much less than they would have insisted upon but for these doings. Our conclusion is, that the verdict is not against law, nor so manifestly against the weight of evidence, as to authorize us to set it aside for that cause.

The other requested instructions are either sufficiently given in the charge, or rendered unnecessary by the accuracy and completeness of the charge upon all the points of law legitimately arising in the case, or have been disposed of in connection with the other questions that have been considered and determined.

*Motion and exceptions overruled.*
*Judgment on the verdict.*

APPLETON, C. J., BARROWS, DANFORTH, VIRGIN and LIBBEY, JJ., concurred.