WILFRED LAJOIE
*vs.*
GERRY BILODEAU, D. B. A.
SUNSET BEVERAGE CO.

IRENE LAJOIE
*vs.*
GERRY BILODEAU, D. B. A.
SUNSET BEVERAGE CO.

Androscoggin.   Opinion, January 8, 1953

360

*Clifford and Clifford,* for plaintiff.

*John A. Platz,* for defendant.

SITTING: MURCHIE, C. J., FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ. (THAXTER, J., did not sit.)

FELLOWS, J. These two actions for negligence brought by Wilfred Lajoie and his wife Irene Lajoie were tried together before a jury in the Androscoggin County Superior Court. At the conclusion of the evidence, the defendant moved that the Presiding Justice direct a verdict in each case, which motion was denied in each case and exceptions taken. There were verdicts for the plaintiffs in the sums of $125 and $425 respectively.

The jury could have found, and undoubtedly did find, that in November 1951 the defendant had sold and delivered to the retail grocery store of Rene Parent & Son in Auburn, some bottles of "Sunset Ginger Ale," which had been manufactured and bottled by the defendant in his bottling plant.

On or about November 25, 1951, Constance Lajoie, the fifteen-year-old daughter of the plaintiffs, went to the Parent store and purchased one of the quart bottles of Sunset Ginger Ale, that had been delivered to the store by the defendant. The bottle was dark green in color, with a side label and a top label. She carried the bottle home without opening it and placed it on the cupboard shelf in the kitchen. She there opened the bottle. The bottle reacted normally,

there was "nothing unusual." There was evidence to indicate that the bottle had not been previously opened or tampered with. Miss Lajoie poured some of the ginger ale into a water glass and took it to her mother who was then in bed with a leg injury. The plaintiff, Irene Lajoie, took a swallow and said it "tasted funny," but continued to drink, and then "wanted to have my father taste it because it didn't taste so good." The father tasted of it and suggested that it be divided among the children. Constance drank some. When Constance Lajoie started to divide it, she heard a "rattle sound in the bottle" and observed an "old dirty brush" in the bottom of the bottle, and "something like rust going up and down in the ginger ale." The bottle, with the brush and the remaining liquid containing the particles of sediment or rust, were taken care of by Lajoie and were in evidence at the trial.

The plaintiff Irene Lajoie became seriously ill immediately after she drank the ginger ale. The daughter Constance also became ill for a short time. Dr. Archambault, who attended, testified that the "gastritis" in his opinion was caused by "the contaminated ginger ale."

The defendant Bilodeau, apparently accepted the task of denial and explanation, and in defense offered evidence tending to show that his ginger ale consumed by Mrs. Lajoie was properly and carefully bottled in accordance with modern methods of washing and sterilizing, which methods were thoroughly explained to the jury; that the bottling plant was regularly inspected and approved by State inspectors; that there were four separate and independent inspections of each bottle passing through the plant; that there were no brushes on any of defendant's machines like the one found in the plaintiff's bottle, and defendant had never used such a brush; that the inspector at times was a fifteen-year-old boy; that the syrup and carbonated water goes into the bottle automatically and is automatically sealed; that at the

bottling plant 200 to 300 cases of 12 to 24 bottles per case go through inspection each day; that empty and returned bottles do come back to the plant "with marbles, pins, anything" but "never found anything after it had been capped;" that when an inspector is ill other men are used as inspectors; that in the opinion of the defendant Bilodeau, it was not "possible at all" for a brush to be in a bottle and to escape being seen or detected in some manner by an inspector. One of the inspectors admitted, however, that on final inspection he once found a cork stopper in a bottle.

From the record in this case the jury, if it believed the evidence of the plaintiff, could properly find that the bottle of ginger ale was in the same condition when opened by Constance Lajoie as it was when it left the defendant's bottling plant.

On exceptions to refusal to direct a verdict, the evidence must be considered in that light which is most favorable to the plaintiff. *Barrett* v. *Greenall,* 139 Me. 75, 80. A verdict should be directed when the evidence raises a pure question of law or when reasonable minds would draw but one conclusion therefrom. It must be apparent that a contrary verdict could not be sustained. *Giguere* v. *Morrisette,* 142 Me. 95; *Andreu, Dostie* v. *Wellman,* 144 Me. 36.

This is not a case where the doctrine of *res ipsa loquitur* is invoked, as in instances where the cause of accident is wholly unexplained and an inference of negligence may possibly be warranted from the accident itself. *Stodder* v. *Coca-Cola Bottling Plants,* 142 Me. 139. This is an action for negligence on the part of a defendant manufacturer where the cause of the injury is susceptible of proof by certain facts from which an inference of negligence may be lawfully drawn, if those facts are believed. Circumstances may properly indicate to the jury a failure on the part of the defendant bottler to use due care, and also that the necessary due care was exercised by the plaintiff. See the fol-

lowing Maine cases of negligence for contaminated water: *Hamilton* v. *Water Company*, 116 Me. 157; *Jackson* v. *Water Co.*, 125 Me. 512. See also regarding foods sold by retailer, *Bigelow* v. *M. C. R. R. Co.*, 110 Me. 105, and *Pelletier* v. *Dupont*, 124 Me. 269, 39 A. L. R., 972 where the actions were on contract, and not actions for negligence against the manufacturer. The proof in negligence cases may raise a presumption of negligence and the burden of proceeding may then be upon the defendant to explain. Evidence in some negligence cases indicating carelessness, if not satisfactorily explained, may be conclusive (as wrong side of road in automobile cases), *Larrabee* v. *Sewall*, 66 Me. 376, 381; *Brown* v. *Sanborn*, 131 Me. 53.

The mere presence of the brush in the bottle is evidence of negligence on the part of the defendant, where there is testimony which, if believed, indicates that the bottle had not been opened since leaving the defendant bottler. It could be properly inferred that the brush was there when processing of the bottle began, or was introduced during the filling of the bottle with ginger ale, and that there was negligence on the part of the defendant in permitting it to get into the bottle, or negligence in not discovering it in the bottle. The condition of the brush and the presence of other foreign matter, like particles of brush or rust, might show that the brush had been in the liquid for a long period. The Massachusetts court said in *Tonsman* v. *Greenglass*, 248 Mass. 275, 278, 142 N. E. 756, "the piece of metal was in the centre of the loaf, and was 'covered with green stuff,' and the bread 'smelled something terrible.' The process of mixing the ingredients, and the machinery used, were described by one of the defendants, but no explanation was offered as to the presence of this foreign substance in the loaf. The jury reasonably could infer that it got into the bread during the process of manufacture, because it was imbedded in the centre or soft part, and the discoloration of the iron and

the bad odor indicated that the metal was there while the dough was soft and during a period of fermentation or other chemical change."

The identical questions presented by this case, involving a foreign substance in bottled goods, have not previously been passed upon by the Law Court of Maine, but they have been decided in many other jurisdictions. In the case of *Middleboro Coca-Cola Bottling Works* v. *Campbell*, 179 Va. 693, 20 S. E. (2nd) 479, there was a similar state of facts, and the reasoning of the Virginia Court regarding proof follows closely the manner of reasoning by our own court in the water pollution case of *Hamilton* v. *Water Company*, 116 Me. 157. The Virginia case holds that proof of a foreign substance in a food package that has not been tampered with, makes out prima facie a case of manufacturer's negligence, and if not overcome by the manufacturer's evidence, will sustain a verdict for the consumer. "Negligence may be established not only by positive but by circumstantial evidence, when the circumstances are sufficient by fair and reasonable inference to take the case out of the realm of conjecture." *Middleboro Coca-Cola Bottling Works* v. *Campbell*, 179 Va. 693, 20 S. E. (2nd) 479. See also *Rudolph* v. *Coca-Cola Bottling Co.* (New Jersey), 132 Atl. 508; *Cloverland Farms Dairy* v. *Ellin* (Maryland), 75 Atl. (2nd) 116; *Tonsman* v. *Greenglass*, 248 Mass. 275, 142 N. E. 756; 22 Am. Jur. 881-900 "Food," Sections 97, 103, 105, 116; 36 C. J. S. "Food," 1121, Section 69. See also Annotations in 4 A. L. R. 1560; 47 A. L. R. 153; 105 A. L. R. 1043; 171 A. L. R. 1218.

The record, of these two cases now under consideration, shows that there was evidence introduced by the plaintiffs from which, if believed, the jury was authorized to draw lawful inferences that establish liability on the part of the defendant bottler. Had the jury relied on the evidence of the defendant, it could have found that the defendant was

not guilty of any alleged negligence. Each of these two cases presented disputed questions of fact for jury determination, and the presiding justice was correct in his refusal to direct verdicts for the defendant.

*Exceptions overruled.*