STATE OF MAINE
CUMBERLAND, ss

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-08-238

THE NORFOLK & DEDHAM GROUP OF
INSURANCE COMPANIES,
AS SUBROGREE OF THE MARLBOROUGH
CONDOMINIUM ASSOCIATION AND
MARIA BOSTON

DONALD L. GARBRECHT
LAW LIBRARY

AND

MARLBOROUGH CONDOMINIUM
ASSOCIATION,
                    Plaintiffs

                                              ORDER ON DEFENDANTS'
v.                                            MOTIONS FOR SUMMARY
                                              JUDGMENT

AGNES KOSTOVICK, GERARD KOSTOVICK,
AND REBECCA KOSTOVICK,
                    Defendants

Before the Court is Defendant Agnes Kostovick's Motion for Partial Summary

Judgment against Plaintiff Norfolk & Dedham Group of Insurance Companies, as

subrogee of the Marlborough Condominium Association and Maria Boston.[1] Also

before the Court is Defendants Gerard Kostovick and Rebecca Kostovick's Motion for

Summary Judgment and Defendant Agnes Kostovick's Motion for Summary Judgment

against both Plaintiffs.

## PROCEDURAL HISTORY

In April 2008, Plaintiff Norfolk & Dedham Group of Insurance Companies, as

subrogee of the Marlborough Condominium Association and Maria Boston (collectively

referred to as "Norfolk & Dedham") filed a four-count complaint against the three

defendants. In June 2008, the Plaintiff amended this complaint. By doing so, the

Marlborough Condominium Association ("MCA") joined the action as a party plaintiff

---

[1] This motion for partial summary judgment does not seek judgment against the Marlborough Condominium
Association.

in order to seek recovery for certain losses that were not covered by the Norfolk & Dedham insurance proceeds. Plaintiffs allege that Agnes Kostovick ("Agnes"), Gerard Kostovick ("Gerard"), and Rebecca Kostovick ("Rebecca") were each individually negligent and that their negligence was the direct and proximate cause of a fire that caused damage to Unit 62 and other areas within the Marlborough Condominiums located at 180 High Street in Portland, Maine. Plaintiffs also allege that the three defendants were engaged in a joint enterprise, such that each defendant could be liable for the negligence of the others. This case is scheduled for trial on the trial list that begins on March 16, 2009.

## FACTUAL BACKGROUND

The following facts are undisputed.[2] The MCA is an association of unit owners of the Marlborough Condominiums. Maria Boston ("Maria") owned Unit 62 in the Marlborough Condominiums and was a member of the MCA, but she did not reside in Unit 62. As a member of the MCA, Maria was assessed a fee proportionate to her share of the common expenses. Common expenses included insurance, but each unit owner was required to maintain insurance on his or her individual unit. Unit owners were permitted to lease their units.

Agnes is Maria and Gerard's mother. Gerard and Rebecca are married.

Sometime in the Fall 2006, Maria agreed and authorized Agnes to move into Unit 62.[3] Maria and Agnes never entered into a written lease for Unit 62. Maria never advised Agnes, orally or in writing, that Agnes would be liable in subrogation for fire

---

[2] These facts are excerpted from all summary judgment filings.

[3] Agnes, Gerard, and Rebecca all agree that Agnes resided in Unit 62 from 2003 until early 2006, but that she did not reside in Unit 62 for approximately eight months in 2006. In response to Agnes' statement of material facts, Plaintiffs deny that Agnes resided in Unit 62 during this timeframe because Agnes did not produce documents supporting this fact. Pls.' Opp. to *Agnes* S.M.F. ¶ 8. But, in response to Gerard and Rebecca's statements of fact, Plaintiffs admit that Agnes resided in Unit 62 during this timeframe. Pls.' Opp. to *Gerard and Rebecca* S.M.F. ¶ 6.

2

damage to the apartment. Maria never advised Agnes, orally or in writing, that Agnes needed to procure fire, liability, or property insurance for Unit 62.

On November 26, 2006, Gerard and Rebecca, along with their two minor children, helped Agnes move some of her personal effects into Unit 62. The Defendants all admit that there was a cloth on the stovetop in the kitchen at the time they were helping Agnes move items into the unit. Agnes placed the towel on the stove sometime prior to November 26, 2006. The Defendants left Unit 62 at approximately 4:30 p.m. Less than fifteen minutes later, at approximately 4:44 p.m., the Portland Police and Fire Departments responded to the report of a fire at the Marlborough Condominiums (hereinafter "the fire"). The responding officer observed that the cook stove/oven was on, with the right front burner of the stove glowing and oven displaying a temperature of 350 degrees.

Several investigators gave their professional opinions regarding the cause of the fire.[4] In the professional opinions of these investigators, contained within sworn affidavits, the fire originated on top of the cook stove in the Unit 62 kitchen. The investigators concluded that the "most likely cause" of the fire was combustibles left on top of the cook stove.

On November 26, 2006, Norfolk & Dedham insured the MCA and its members under a policy of insurance issued to the MCA. In that policy, Norfolk & Dedham specifically waived its rights to recover from any unit-owner. In accordance with the

---

[4] The Plaintiffs rely on an incident report created by the Portland Police Department to bolster the opinion of the investigating officers. *See* Pls.' Opp. S.M.F. ¶¶ 41, 54, 55. However, the report is not properly before the Court. *See* M.R. Civ. P. 56(e) ("Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."). Deputy Chief William Flynn's affidavit states that the December 8, 2006 incident report of the Portland Fire Department is attached as "Exhibit A-2." Detective Paul Murphy's refers to this same incident report and states that it is attached as "Exhibit B-2." The incident report is not attached to either affidavit and therefore cannot be sworn to or certified as required by M.R. Civ. P. 56(e). Therefore, the Court will not consider the contents of the incident report.

terms of the insurance policy issued to the MCA, Norfolk & Dedham made payments to the MCA for the damages caused by the fire.

## DISCUSSION

### I. Standard of Review

In a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party to decide whether the parties' statements of material facts and the referenced record material reveal a genuine issue of material fact. *Rogers v. Jackson*, 2002 ME 140, ¶ 5, 804 A.2d 379, 380 (citations omitted). The Court gives the party opposing summary judgment the benefit of any inferences that might reasonably be drawn from the facts presented. *Curtis v. Porter*, 2001 ME 158, ¶ 9, 784 A.2d 18, 22. If the record reveals no genuine issue of material fact then summary judgment is proper. *Id.* ¶ 6, 784 A.2d at 21. A genuine issue of material fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial. *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179.

### II. Agnes' Motion for Partial Summary Judgment[5]

Agnes' first motion for partial summary judgment rests entirely on the holding in *North River Ins. Co. v. Snyder*, 2002 ME 146, 804 A.2d 399. Agnes argues that the holding in *Snyder* precludes Norfolk & Dedham from recovering as a subrogee of MCA or Maria because the *Snyder* court held that a residential tenant cannot be liable in subrogation by a landlord's insurer, absent an express agreement. Because it is undisputed that Maria and Agnes did not have an express agreement of this nature, Agnes argues that summary judgment is proper. In response, Plaintiffs argue that

---

[5] Defendants Gerard and Rebecca join in this motion. In short, Gerard and Rebecca argue that if no subrogation action is allowed as to Agnes then Gerard and Rebecca cannot be held liable. However, the narrow holding of *North River Ins. Co. v. Snyder*, 2002 ME 146, 804 A.2d 399 does not preclude recovery against these defendants.

4

*Snyder* is either inapplicable because Agnes was not a tenant of either Maria or the MCA, or alternatively, they argue that an application of *Snyder* on these facts would be an expansion, and indeed a distortion, of the rationale upon which the *Snyder* decision rests. In short, the issue is whether Maria and Agnes, and by extension Agnes and the MCA, had a landlord-tenant relationship such that the *Snyder* anti-subrogation rule applies.

The *Snyder* court carefully drafted its holding and made it clear that it only decided the narrow issue of subrogation claims in the residential tenant context. *Id.* ¶ 16, 804 A.2d at 403. The anti-subrogation rule announced in *Snyder* is based on considerations of economic waste in the procurement of insurance and the reasonable expectations of a landlord and a tenant.[6] *Id.* ¶¶ 15-16, 804 A.2d at 402-03. The *Snyder* holding is unambiguous by its own terms:

> a residential tenant may not be held liable in subrogation to the insurer of the landlord for damages paid as a result of a fire, absent an agreement to the contrary-that is, absent an express agreement in the written lease that the tenant is liable in subrogation for fire damage to the apartment complex.

*Id.* ¶ 1, 804 A.2d at 400.

In Maine, a written lease is not necessary to establish a tenancy-at-will. *See* 33 M.R.S. § 162. In fact, a "tenancy-at-will relationship may arise even if the parties do not agree to the payment of rent or a landlord and tenant relation does not exist." *Frost Vacationland Properties, Inc. v. Palmer*, 1999 ME 15, ¶ 10, 723 A.2d 418, 421. A tenant is "[o]ne who holds or possesses lands or tenements by any kind of right or title." Black's Law Dictionary 1506 (8th ed. 2004).

---

[6] The Court did not hold that a tenant was an implied co-insured. *See Snyder*, 2002 ME 146 ¶¶ 15-16, 804 A.2d at 403.

The relationship between Maria and Agnes, and between the MCA and Agnes by extension, falls squarely within the *Snyder* anti-subrogation rule. It is undisputed that Maria orally permitted Agnes to reside in Unit 62. Prior to the date of the fire, Agnes paid Maria's share of the common expenses directly to the MCA. Although Agnes had not taken possession at that time, certainly the payment of the November common expenses demonstrates her right to possess the premises on and before the date of the fire. There is no evidence that Agnes paid money directly to Maria for rent. However, the money paid directly to the MCA for Maria's common expenses is sufficient for the Court to conclude that the relationship between Agnes and Maria was more than that of host and guest; rather, the payment of fees transformed the relationship into that of a landlord and tenant.[7] Agnes and Maria did not have a written lease; therefore, they did not have an express agreement in the written lease that Agnes would be liable in subrogation for fire damage to the condominium building. Hence, the *Snyder* decision controls.

The *Snyder* rationales remain relevant and germane in the context of a condominium building, just as they did to the apartment complex in *Snyder*. The Court finds no meaningful distinction between the two, despite Norfolk & Dedham's urging. An anti-subrogation rule in the context of condominium tenants avoids economic waste by not requiring each tenant to procure liability insurance for his or her own unit and possibly the entire building, to guard against a subrogation action. This is so even with the two-tired insurance scheme in the condominium context. Although by statute and

---

[7] Plaintiffs contend in earnest that the relationship between Agnes and Maria is akin to a homeowner and houseguest. However, the weight of this argument is based on Plaintiffs' subjective belief that the payment of common expenses is inadequate for the rental of this condominium unit. Rent need not be the fair market value of the condominium unit; it is sufficient for the conclusion that there was a landlord-tenant relationship that Agnes paid Maria's obligation to the MCA as consideration for a right to possess the premises.

by the bylaws the MCA and the unit owners both must obtain insurance on the property, the insurable interests are distinct.

This rule also fits within the general expectations of the parties. Without a written agreement to the contrary, it was reasonable for Agnes to assume that the money she paid to the MCA, which admittedly paid for insurance premiums, would ultimately protect her from a subrogation action by Norfolk & Dedham.

In sum, the holding of *North River Ins. Co. v. Snyder*, 2002 ME 146, 804 A.2d 399 is controlling and establishes, as a matter of law, that Plaintiff Norfolk & Dedham Group of Insurance Companies, as subrogee of the Marlborough Condominium Association and Maria Boston, may not recover from Agnes Kostovick the $75,262.75 it paid to the Marlborough Condominium Association as a result of fire damage to the Marlborough Condominiums on November 26, 2006. As such, partial summary judgment in favor of Agnes Kostovick is appropriate.

## III. Gerard and Rebecca's Motion for Summary Judgment

### A. Prima Facie Case of Negligence

Gerard and Rebecca argue that the Plaintiffs have not presented sufficient evidence to establish that they owed a duty to Maria or to the MCA, and therefore, there could be no breach thereof. Additionally, Gerard and Rebecca argue that the Plaintiffs failed to present sufficient evidence to allow a fact finder to infer negligence and causation from the occurrence of the fire. In their opposition, the Plaintiffs argue that Gerard and Rebecca had a duty to avoid creating a dangerous condition while present in Unit 62. They breached this duty, argue the Plaintiffs, when they failed to remove a towel that they admittedly saw on top of the electric cook top/oven in the kitchen. The Plaintiffs then rely on sworn testimony of investigators with the Portland

Police and Fire Departments as evidence that the fire originated in the kitchen and that the "most likely cause" of the fire was combustibles left on the top of the cook stove.[8]

The Plaintiffs must come forward with all elements of a *prima facie* case of negligence against Defendants Gerard and Rebecca because these defendants attacked all aspects of Plaintiffs' negligence claims. *See Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶ 9, 742 A.2d 933, 938 (holding that a plaintiff's duty to come forward with record evidence in support of the elements of a claim arises only after the defendant has specifically attacked the record evidence as an insufficient basis to meet an element of a claim). A *prima facie* case of negligence requires a plaintiff to establish four elements: duty, breach, causation, and damages. *Mastriano v. Blyer*, 2001 ME 134, ¶ 11, 779 A.2d 951, 954.

"The existence of a duty of care is a question of law, while issues of the breach of a duty of care are usually questions of fact." *Reid v. Town of Mt. Vernon*, 2007 ME 125, ¶ 14, 932 A.2d 539, 544. Duty is not a question of whether a defendant owes a general duty, but the question is "whether the defendant is under any obligation for the benefit of the *particular plaintiff*." *Searles v. Trustees of St. Joseph's College*, 1997 ME 128, ¶ 5, 695 A.2d 1206, 1209 (emphasis added). If there is a duty, that duty is "to conform to the

---

[8] In their Reply to Plaintiffs' statement of additional material facts, Gerard and Rebecca make several objections. First, Gerard and Rebecca object to Plaintiffs' reliance on the Condominium Declarations pursuant to M.R. Civ. P. 56(e). *Gerard and Rebecca's* Reply S.M.F. ¶¶ 22, 23. However, M.R. Civ. P. 56(e) is inapplicable because the declarations are not attached to sworn affidavits. "[T]he factual basis to support or oppose a motion for summary judgment can be provided by (i) any statement under oath . . .or (ii) any other document that would have evidentiary significance in a trial." *MSBA Practice Series Maine Rules of Civil Procedure* 386 (Hon. Donald G. Alexander et al. eds., 2008). The evidence relied on must be admissible. The issue of whether the Condominium Declaration can be relied on can be answered by asking one question: "Would the referenced statement or evidence be admissible at trial through the individual offering the statement in the summary judgment proceeding?" *Id.* at 387. Because this document is not stipulated to and because the Plaintiffs do not properly authenticate it, the Court does not rely on its contents. Second, Gerard and Rebecca make another Rule 56(e) objection to the Plaintiffs' reliance on the transcript of a recorded statement of Maria Boston, taken on December 1, 2006, by an insurance agent. *Gerard and Rebecca's* Reply S.M.F. ¶¶ 26, 27, 28; *See also* Ex. B. Again, however, Gerard and Rebecca's focus on M.R. Civ. P. 56(e) is misplaced because this transcript is a stand-alone document. Nonetheless, this transcript is inadmissible hearsay. *See* M.R. Evid. 802. It is undisputed that Maria does not have personal knowledge of the events of November 26, 2006 because she was not there. Therefore, the Court disregards this inadmissible hearsay relied on by Plaintiffs in their opposition to summary judgment.

8

legal standard of reasonable conduct in the light of the apparent risk." *Reid*, 2007 ME 125, ¶ 15, 932 A.2d at 544. (quoting WILLIAM L. PROSSER & W. PAGE KEETON, PROSSER & KEETON ON TORTS § 53 at 359 (5th ed. 1984)). In Maine, a non-possessor of land "who negligently creates a dangerous condition . . . may be liable for reasonably foreseeable harms." *Quirion v. Geroux*, 2008 ME 41, ¶ 10, 942 A.2d 670, 673.

It is black letter law in Maine that "the mere fact of the happening of an accident is not evidence of negligence." *Reid*, 2007 ME 125, ¶ 18, 932 A.2d at 544. *See also* Donald G. Alexander, Maine Jury Instruction Manual § 7-60 (2008) ("The fact that an accident happened or an injury occurred, by itself, does not permit you to infer that the accident or injury was caused by negligence or by anyone's fault."). Also, "[i]n order to recover for damages in a cause of action for negligence or for any other tort, a plaintiff must establish that there be some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered." *Houde v. Millett*, 2001 ME 183, ¶ 10, 787 A.2d 757, 759 (internal quotation omitted).

In *Quirion v, Geroux*, the plaintiff's evidence was insufficient to survive defendant's motion for summary judgment. 2008 ME 41, ¶ 11, 942 A.2d at 673. In that case, an awning blew off a building and injured the plaintiff. *Id.* That plaintiff could not avoid summary judgment when her statements of material fact merely stated that "the bolts securing the awning to the building were pulled from the building by a strong wind, which caused the awning to fall and hit [her]." *Id.* On appeal, the Law Court held that there was no evidence that the defendant "removed and replaced the bolts or otherwise loosened or disturbed the bolts when he removed and replaced the awnings." *Id.* Although the non-possessor of land in that case owed a duty to hotel patrons "to not cause an unreasonably dangerous condition through his work on the awnings," there was no evidence to generate issues of material fact that there was a

9

breach of his duty or evidence establishing the link between this breach and the plaintiff's injuries. *Id.*

Clearly, the Defendants owed the MCA and Maria a duty to not cause an unreasonably dangerous condition when they moved Agnes' possessions into Unit 62. *See Quirion v. Geroux,* 2008 ME 41, ¶ 10, 942 A.2d at 673. The next issue is whether there is evidence that the defendants breached that duty and if that breach was the proximate cause of the Plaintiffs' injuries.

The record reflects that Gerard and Rebecca were moving items into Unit 62 just before the fire. Plaintiffs have not put forward any evidence that either or both Gerard and Rebecca placed combustible items on the stove.[9] Plaintiffs also have not put forward any evidence to generate issues of material fact regarding how the cook stove burner was turned on or how the oven got turned to 350 degrees on the day of the fire. Plaintiffs statement of fact that one of the Defendants "accidentally" turned the stove on before they left Unit 62 falls short of establishing the necessary link to connect Gerard and/or Rebecca's conduct to the Plaintiffs' injuries. Therefore, the Court concludes that the Plaintiffs failed to establish a breach of duty for its *prima facie* case of negligence against Gerard and Rebecca.[10]

---

[9] The only related evidence is that Agnes, Rebecca, and Rebecca's two daughters unpacked food from boxes in the kitchen and that Gerard placed cardboard boxes on top of a butcher block in the kitchen.

[10] Even if the Court were to accept Plaintiffs' argument that Gerard and Rebecca's failure to remove the towel was a breach of duty, Plaintiffs still would be unable to establish the next element for a *prima facie* case: proximate causation. The placement of the towel, and the failure to remove the towel, was not the proximate cause of the fire. Agnes placed the towel on the stove prior to November 26, 2006, yet no fire occurred in Unit 62 until after the three defendants left the unit at approximately 4:30 p.m. on November 26, 2006. In other words, the proximate cause of the fire was the combination of combustibles on and around the stove *plus* the activation of the stove. There is no evidence as to how the stove was activated, or by whom, on November 26, 2006. Therefore, Plaintiffs' "evidence" that either Gerard or Rebecca activated the stove is purely speculation and fails to demonstrate a *prima facie* case for proximate cause. *See Merriam v. Wanger,* 2000 ME 159, ¶ 10, 757 A.2d 778, 781.

10

## B. Res Ipsa Loquitur

In certain cases, a plaintiff may survive summary judgment, and ultimately judgment as a matter of law, if the case is suitable for a *res ipsa loquitur* jury instruction. "Res ipsa loquitur is neither substantive law nor a theory of negligence. Rather, it is a form of circumstantial evidence that permits a jury to infer negligence and causation from the mere occurrence of an event." *Poulin v. Aquaboggan Waterslide,* 567 A.2d 925, 926 (Me. 1989). *Res ipsa loquitur* is applicable "where (i) there has been an unexplained accident, (ii) the instrument that caused the injury was under the management or control of the defendant and (iii) in the ordinary course of events, the accident would not have happened absent negligence on the part of the defendant." *Wellington Assoc., Inc. v. Capital Fire Protection Co.,* 594 A.2d 1089, 1092 (Me. 1991).[11] The Court must "review the evidence to determine whether a jury rationally could conclude by a preponderance of the evidence that the elements of the Restatement apply." *Poulin,* 567 A.2d at 927.

The first requirement for the application of the *res ipsa loquitur* doctrine requires the Court to consider whether a jury rationally could conclude by a preponderance of the evidence that the fire was an unexplained accident. For example, in *Lajoie v. Bilodeau,* the plaintiffs sued when they became ill after finding a rusty brush inside their newly purchased and partially consumed ginger ale bottle. 148 Me. 359, 361, 93 A.2d 719, 720 (Me. 1953). This was not a "wholly unexplained" accident; rather "it was susceptible of proof by certain facts." *Id.* at 362, 93 A.2d at 720-21.

---

[11] In *Poulin v. Aquaboggan Waterslide* the Law Court stated that it "adopted the definition of res ipsa loquitur set forth in the Restatement (Second) of Torts § 328D." 567 A.2d at 926 (citing *Ginn v. Penobscot Co.,* 334 A.2d 874, 880 (Me. 1975). However, subsequent decisions rely on the slightly different version of the *res ipsa loquitur* doctrine as quoted above and set forth in the *Wellington Associates* case. *See e.g., Sheltra v. Rochefort,* 667 A.2d 868, 870 (Me. 1995); *see also* 1-7 *Maine Jury Instruction Manual* § 7-65. Accordingly, the Court utilizes the *Wellington Associates* framework, rather than Restatement § 328D, for its determination of the applicability of *res ipsa loquitur* to Plaintiffs' claims.

11

This is not a case where the cause of the fire is wholly or even partially unexplained. It is clear from the record that the fire in Unit 62 originated on the stove. It is also clear from the record that there was at least one combustible item left directly on the stove (the towel) and that there were other combustible items in the general vicinity of the stove. The responding officer from the Portland Fire Department saw that one of the burners was "glowing" and that the stove was turned on to 350 degrees. No one besides Agnes, Gerard, Rebecca, and the two minor children were in Unit 62 immediately before the alarm sounded that triggered the response of the Portland Fire Department. There is no evidence that one of the defendants did anything markedly different than any other defendant. The only missing fact is how the stove was activated. This activation set in motion a series of events, which ultimately caused harm to the Plaintiffs. The activation of the stove is susceptible to proof by certain facts, yet the Plaintiffs have failed to present any such facts. Accordingly, a jury could not reasonably conclude that this accident was unexplained. *See Lajoie,* 148 Me. at 362-63, 93 A.2d at 720-21.

Because Plaintiffs cannot meet the first requirement of *res ipsa loquitur,* the Court does not address the second and third requirements regarding the management or control of the instrumentality and the determination that this is a type of accident that would not normally occur in the absence of negligence by these defendants, respectively. Therefore, the Plaintiffs cannot survive summary judgment by relying on the inference provided by the *res ipsa loquitur* doctrine.

## IV. Agnes' Second Motion for Summary Judgment

The only remaining claim against Agnes is the direct claim by the MCA for damages not covered under the Norfolk & Dedham policy. Agnes moved for summary judgment on this claim by adopting and incorporating Gerard and Rebecca's motion for

12

summary judgment. Although the record is more developed regarding this motion because the parties' depositions are included, the analysis and outcome for Agnes is same as it was for Gerard and Rebecca. Accordingly, the Court incorporates by reference the above analysis and only briefly addresses the application of the law to the additional evidence provided through the M.R. Civ. P. 56(h) statements of material facts.

Agnes owed Plaintiffs a duty to exercise reasonable care during the time when she was moving items into Unit 62. *See Quirion v. Geroux*, 2008 ME 41, ¶ 10, 942 A.2d at 673. However, Agnes' admission that she placed a towel on the stove, and did not remove it, does not provide the necessary link to demonstrate that she breached this duty or that this alleged breached proximately caused the fire. *See discussion supra* Section III.

This not an unexplained occurrence. Indeed, the fire at Unit 62 is almost entirely explainable. The fire began in the kitchen; both the stove and a burner were on when the Portland Fire Department responded; and there were combustible items on and around the stove. Any negligence by Agnes as to how her actions caused the stove to turn on is susceptible to proof by facts. Nonetheless, Plaintiffs have presented no such evidence. Plaintiffs cannot avoid their burden of proof by relying on *res ipsa loquitur*. Accordingly, *res ipsa loquitur* is of no aid to Plaintiffs.

## V. Joint Enterprise

Maine courts will impute negligence to co-defendants if a plaintiff can establish that the defendants were engaged in a joint enterprise. A joint enterprise requires "proof of a community of interest in and the joint prosecution of a common purpose under such circumstances that each participant has authority to act for all in directing

13

and controlling the means of agency employed." *Morey v. Stratton*, 2000 ME 147, ¶ 7, 756 A.2d 496, 498.

Imputing negligence to others, most obviously, presumes the existence of negligence. In this case, irrespective of any proof that there was a community of interest with a common purpose for moving Agnes into Unit 62, the Plaintiffs failed to present a *prima facie* case of negligence to the Court. *See discussion supra* Section III and IV. Therefore, there is no negligence that the Court could impute to any or all of the defendants. Therefore, the Court grants Defendants Gerard, Rebecca, and Agnes' motions for summary judgment regarding joint enterprise liability.

Therefore, the entry is:

Defendant Agnes Kostovick's Motion for Partial Summary Judgment against Plaintiff Norfolk & Dedham Group of Insurance Companies, as subrogee of the Marlborough Condominium Association and Maria Boston is GRANTED.

Defendants Gerard Kostovick and Rebecca Kostovick's Motion for Summary Judgment against both Plaintiffs is GRANTED.

Defendant Agnes Kostovick's Motion for Summary Judgment against Plaintiff Marlborough Condominium Association is GRANTED.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this __11ᵗʰ__ day of ___March___, 2009.

_____
Robert E. Crowley
Justice, Superior Court

14

## STATE OF MAINE
### CUMBERLAND COUNTY SUPERIOR COURT



142 FEDERAL STREET
PORTLAND, MAINE 04101

To:

DANIEL MAWHINNEY ESQ   *p*
THOMAS MARCZAK ESQ
THOMPSON & BOWIE
PO BOX 4630
PORTLAND ME 04112-4630

---

## STATE OF MAINE
### CUMBERLAND COUNTY SUPERIOR COURT



142 FEDERAL STREET
PORTLAND, MAINE 04101

To:

J WILLIAM DRUARY ESQ   *A Kostvick*
DANIEL BILLINGS ESQ
MARDEN DUBORD BERNIER & STEVENS
PO BOX 708
WATERVILLE ME 04901-0708

---

## STATE OF MAINE
### CUMBERLAND COUNTY SUPERIOR COURT



142 FEDERAL STREET
PORTLAND, MAINE 04101

To:

*C + A.*

JOHN VEILLEUX ESQ
NORMAN HANSON & DETROY   *Kostvick*
PO BOX 4600
PORTLAND ME 04112-4600